

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00150-CR
### No. 10-17-00151-CR

**ROBERT TEMPLE SUMMERS, III,**

                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                **Appellee**

### From the 220th District Court
### Bosque County, Texas
### Trial Court Nos. CR 14458 and CR 14459

## O P I N I O N

Appellant Robert Temple Summers, III, appeals from the sentence rendered against him on or about April 3, 2017, in each of these underlying cases. Summers contends that (1) the evidence is insufficient to support the trial court's decision to order that he pay court-appointed attorney fees in each case and (2) the judgments erroneously state that he waived his right to appeal. For the reasons stated below, we affirm the trial court's judgments as modified.

## Background

Summers pleaded guilty, pursuant to plea agreements, to evading arrest with a motor vehicle in trial court cause number CR 14458 and to possession of a prohibited weapon in trial court cause number CR 14459. *See* TEX. PENAL CODE ANN. § 38.04 (West 2016), § 46.05 (West Supp. 2017). In each case, the trial court deferred an adjudication of guilt, placed Summers on community supervision for five years, and imposed a $1,000 fine.

The State subsequently moved to proceed to an adjudication of guilt in each case, alleging that Summers violated several conditions of his community supervision. Summers thereafter applied for and was appointed an attorney to represent him in both cases. The order appointing counsel stated, "The Court finds that the Defendant, while indigent, has the ability to pay at least the amount of $500 which is a minimum attorney's fee based on this Court's fee schedule."

On April 4, 2016, the trial court held an evidentiary hearing on the State's motions to proceed to adjudications of guilt. The trial court found that Summers had violated several conditions of his community supervision and accordingly adjudicated Summers guilty of both the evading-arrest offense and possession-of-a-prohibited-weapon offense. The trial court then orally pronounced a sentence of "two years in the State Jail facility, a $1,000 fine, [and] court costs" for the evading-arrest offense and a sentence of "two years in the Institutional Division, a $1,000 fine[,] and $219 in court costs" for the possession-of-a-prohibited-weapon offense. But the trial court suspended the sentence of confinement in both cases and again placed Summers on community supervision for five

years.  The trial court then stated, "All the terms and conditions of probation are carried forward and . . . I'll add fifty additional hours of community service to the hours that were announced originally.  So [Summers] get[s] to do fifty more hours in each case."  The trial court also declared that "an additional expense to the term[s] and condition[s] of [Summers's] probation" was that he had "to pay the county back for the work that [his attorney] did."  The trial court specified, "Total of $450.  $350 in [the evading-arrest case], another $100 in [the possession-of-a-prohibited-weapon case] and those are in addition to the other assessments."  Summers had signed a waiver of appeal in each case before the hearing, and he confirmed on the record at the end of the hearing that he was waiving his right of appeal.

That same day, the trial court signed a written judgment adjudicating guilt in each case.  The judgment in the evading-arrest case sentenced Summers to twenty-four months' confinement in the state jail division, suspended for five years' community supervision; assessed a $1,000 fine; and ordered Summers to pay court costs of $219.  Similarly, the judgment in the possession-of-a-prohibited-weapon case sentenced Summers to twenty-four months' confinement in the institutional division, suspended for five years' community supervision; assessed a $1,000 fine; and ordered Summers to pay court costs of $219.  The judgments further incorporated by reference the orders setting forth the terms and conditions of community supervision, which were also signed by the trial court in each case on April 4, 2016.  Condition No. 16 in the orders required Summers to pay a "COURT-APPOINTED ATTORNEY FEE in the amount of $350.00" in

the evading-arrest case and "in the amount of $100.00" in the possession-of-a-prohibited-weapon case.

The next day, April 5, 2016, the district clerk prepared a bill of costs in each case, itemizing various fees and costs. The bill of costs was not expressly incorporated into the judgments. Instead, it was separately filed by the district clerk. In the evading-arrest case, the bill of costs totaled $1,719, consisting of a line item of $1,000 for the fine assessed, various line item fees totaling $219, and a line item of $500 for "COURT APPOINTED ATTORNEYCRIMINAL." Similarly, in the possession-of-a-prohibited-weapon case, the bill of costs totaled $1,319, consisting of a line item of $1,000 for the fine assessed, various line item fees totaling $219, and a line item of $100 for "COURT APPOINTED ATTORNEYCRIMINAL."

The State again moved to revoke Summers's community supervision, alleging that he again violated certain terms and conditions of his community supervision. Summers again applied for and was appointed an attorney to represent him in both cases. Unlike in the first order appointing counsel in these cases, however, the trial court found in the second order appointing counsel that Summers was indigent and unable to pay anything.

On April 3, 2017, the trial court held an evidentiary hearing on the motions to revoke Summers's community supervision and found that Summers had violated several conditions of his community supervision. Accordingly, the trial court revoked Summers's community supervision and orally pronounced his sentence as follows:

> Sentence in Cause No. 14458 [the evading-arrest case], sentence is 20 months in the State jail, court costs, $350 in court appointed attorney's fees, all those -- $1,000 fine, court costs. All financial obligations, Mr. Summers,

will be given credit for. Some of these he's already paid. The others will be carried forward.

Cause No. 14459 [the possession-of-a-prohibited-weapon case], sentence is two years in the Institutional Division, $1,000 fine, court costs, $100 in court appointed attorney fees. Mr. Summers will be given credit for all of those financial obligations to the extent that he's paid them. Balance is carried forward.

The trial court then stated the following in open court regarding Summers's right of appeal:

Mr. Summers, obviously, this is not an agreed revocation and so you need to be aware that you may have some appellate rights in this regard. I'll leave it to [your attorney] to advise you regarding those appellate rights, but I will tell you that since Counsel was appointed to represent you, you're probably entitled to appointed counsel on appeal, if you desire to appeal the decision of this Court. There's a limited time period for you to give proper notice of that and [your attorney] can give you that information.

[Summers's attorney], if Mr. Summers desires to appeal, your appointment would continue until or unless you give notice to the Court of a motion to withdraw and you file a motion for new trial and a notice of appeal.

On April 20, 2017, the trial court signed a written judgment revoking Summers's community supervision in each case.[1] The judgment in the evading-arrest case states that the "Original Punishment Assessed" was twenty-four months' confinement in the state jail division, suspended for five years' community supervision; a $1,000 fine; court costs; court-appointed attorney's fees in the amount of $350; and fifty community-service hours. The judgment then sentenced Summers to twenty months' confinement in the

---

[1] The trial court subsequently signed a nunc pro tunc judgment revoking Summers's community supervision in each case on May 1, 2017, but the corrections that the trial court made are not relevant to these appeals.

state jail division, assessed a $1,000 fine, and ordered Summers to pay court costs of $219. Similarly, the judgment in the possession-of-a-prohibited-weapon case states that the "Original Punishment Assessed" was twenty-four months' confinement in the institutional division, suspended for five years' community supervision; a $1,000 fine; court costs; court-appointed attorney's fees in the amount of $100; and fifty community-service hours. The judgment then sentenced Summers to twenty-four months' confinement in the institutional division, assessed a $1,000 fine, and ordered Summers to pay court costs of $219. The judgment in each case also states, "Defendant waived appeal."

That same day in the possession-of-a-prohibited-weapon case, and the next day, April 21, 2017, in the evading-arrest case, the district clerk prepared a bill of costs. The bills of costs were not expressly incorporated into the judgments. Instead, they were separately filed by the district clerk. In the evading-arrest case, the bill of costs again totaled $1,719, consisting of a line item of $1,000 for the fine assessed, various line item fees totaling $219, and a line item of $500 for "COURT APPOINTED ATTORNEYCRIMINAL." Similarly, in the possession-of-a-prohibited-weapon case, the bill of costs again totaled $1,319, consisting of a line item of $1,000 for the fine assessed, various line item fees totaling $219, and a line item of $100 for "COURT APPOINTED ATTORNEYCRIMINAL."

The trial court subsequently signed a certification of defendant's right of appeal, stating that each case "is not a plea-bargain case and the Defendant has the right of appeal." Summers filed a notice of appeal in each case, stating that he desired to appeal

Summers v. State                                                                                          Page 6

from the sentence rendered against him on April 3, 2017. The appeals were docketed as appellate court cause number 10-17-00150-CR in the evading-arrest case and appellate court cause number 10-17-00151-CR in the possession-of-a-prohibited-weapon case. The trial court then granted Summers's trial attorney's motion to withdraw as his attorney of record in both cases and appointed an attorney to represent Summers in these appeals. The order appointing Summers an appellate attorney states, "The Court presumes the Defendant remains indigent and entitled to appointed counsel."

## Court-Appointed Attorney Fees

In his first issue in each of these appeals, Summers contends that the evidence is insufficient to support the trial court's decision to order him to pay court-appointed attorney fees. Summers acknowledges that when the trial court adjudicated his guilt and first ordered him to pay attorney fees in each case, the trial court had found that he had the ability to pay at least the amount of $500 in attorney fees. Summers argues that at that time, however, the trial court ordered him to pay attorney fees *only* as a condition of his community supervision. Summers claims that by the time the trial court revoked his community supervision and ordered him to pay attorney fees as an independent obligation in each case, the trial court had found that he was unable to pay any amount in attorney fees.

The State first responds by arguing that Summers's notices of appeal, each of which states that he is appealing "from the sentence herein rendered against Defendant ... on April 3, 2017," do not confer jurisdiction on this Court to entertain Summers's issues about the assessment of court-appointed attorney fees. Specifically, the State claims that

Summers's notices of appeal are insufficient because attorney fees are not part of the "sentence" and are instead court costs. The State further notes that the written judgments in these cases do not assess the attorney fees. The bills of costs show the assessment of attorney fees, and the bills of costs are not expressly incorporated into the written judgments. The State contends that Summers is therefore not appealing from the judgments in these cases but that Summers is appealing from the bills of costs and bills of costs are not appealable orders.

The Court of Criminal Appeals has held that the issue of whether the evidence is sufficient to support attorney fees mandated by the certified bill of costs in a case is a criminal law matter that a defendant may properly challenge on direct appeal. *Ex parte Knight*, 401 S.W.3d 60, 66 (Tex. Crim. App. 2013); *Armstrong v. State*, 340 S.W.3d 759, 766-67 (Tex. Crim. App. 2011). The issue may be addressed on direct appeal even if the attorney fees as set forth in the certified bill of costs are not incorporated by reference in the written judgment. *Armstrong*, 340 S.W.3d at 767. The only question in the appeals before us then is whether Summers's notices of appeal are sufficient to have triggered our appellate jurisdiction to address the issue in each of these cases.

Our appellate jurisdiction is triggered by the timely filing of a sufficient notice of appeal. *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996); *see* TEX. R. APP. P. 25.2(b). "Notice is sufficient if it shows the party's desire to appeal from the judgment or other appealable order. . . ." TEX. R. APP. P. 25.2(c)(2). Summers's notices of appeal in these cases each state that he is appealing "from the *sentence* herein rendered against Defendant ... on April 3, 2017." [Emphasis added.] An order requiring repayment of

attorney fees is not, however, part of a defendant's sentence. *Knight*, 401 S.W.3d at 66 (citing *Armstrong*, 340 S.W.3d at 765-67).

But on April 3, 2017, when orally pronouncing Summers's sentence in these cases, the trial court, albeit wrongly, indicated that the order requiring repayment of attorney fees was included as part of Summers's sentence. Furthermore, "[t]he Texas Rules of Appellate Procedure were amended in 2002 to prevent trivial, repairable mistakes or defects from divesting appellate courts of the jurisdiction to consider the merits of both State and defense appeals in criminal cases." *Few v. State*, 230 S.W.3d 184, 187 (Tex. Crim. App. 2007). The Rules of Appellate Procedure now allow amended notices of appeal to be filed to correct defects or omissions in earlier filed notices. TEX. R. APP. P. 25.2(f). We therefore conclude that Summers's notices of appeal in these cases are sufficient to have triggered our appellate jurisdiction to address his first issue in each of these appeals.

The State next contends that Summers has forfeited his complaints about being ordered to repay court-appointed attorney fees. The State asserts that the trial court ordered the repayment of attorney fees in each case in April 2016, when the trial court adjudicated Summers's guilt and then placed him on community supervision for the second time in each case. The State avers that in April 2017, when the trial court subsequently revoked Summers's community supervision, the trial court merely "carried forward" the obligation to repay attorney fees in each case. The State argues that Summers's complaints about being ordered to repay attorney fees should therefore have been raised in appeals immediately following the adjudications of his guilt and his placement on community supervision in 2016. The State contends that Summers has

forfeited the complaints by waiting to raise the issues in these appeals following the revocation of his community supervision in 2017.

To support its position, the State relies on *Wiley v. State*, 410 S.W.3d 313 (Tex. Crim. App. 2013), and *Riles v. State*, 452 S.W.3d 333 (Tex. Crim. App. 2015). In *Wiley*, after finding the appellant indigent and appointing him counsel, the trial court accepted the appellant's guilty plea, entered pursuant to a plea agreement, and pronounced his sentence. 410 S.W.3d at 314. The trial court, however, suspended the sentence and placed the appellant on community supervision. *Id.* On the same date, the trial court entered the written judgment, which included an assessment of court costs in the amount of $898. *Id.* The judgment also incorporated the appellant's conditions of community supervision, and, in a declaration signed by the appellant that appeared on the last page of the judgment, the appellant acknowledged that the conditions of community supervision had been read and explained to him and that he understood them. *Id.* at 314-15. The conditions expressly included a requirement that the appellant pay, as court costs, all court-appointed attorney fees, which was then followed by the statement in bold, capital letters, "**SEE THE ATTACHED BILL OF COSTS**." *Id.* at 314-15 & n.3. The bill of costs was attached to the judgment and indicated that it had been printed on the same day that the trial court entered the judgment. *See id.* at 314-15. It itemized the particulars of the court costs, which included a $400 cost for the appellant's court-appointed attorney during the plea proceedings. *Id.* at 315.

About two months later, the State in *Wiley* moved to revoke the appellant's community supervision. *Id.* After again finding the appellant indigent and appointing

him counsel, the trial court conducted a hearing on the State's motion and then revoked the appellant's community supervision. *Id.* The trial court entered the written judgment on the same day. *Id.* A new bill of costs itemizing the appellant's total court costs was then printed the next day. *Id.* The court costs included the unpaid $400 balance for the court-appointed attorney who represented the appellant when the trial court initially placed him on community supervision. *Id.*

The appellant in *Wiley* thereafter appealed, complaining for the first time that the evidence had been insufficient to support the order that he pay for his court-appointed attorney for the initial plea proceedings. *Id.* at 314. The appellant argued that he had not forfeited his complaint by failing to raise it in an appeal immediately following his placement on community supervision because he was not appealing from the original order imposing the reimbursement of appointed attorney fees as a condition of his community supervision. *Id.* at 319. The appellant contended that he was instead "appealing the later revocation order, which improperly *reiterated* the requirement that he reimburse his appointed attorney fees even though he would no longer enjoy the benefits of community supervision." *Id.* The appellant claimed that, without the addition of that explicit requirement in the revocation order, he would not have been expected to reimburse those fees any more than he would have been expected to continue to fulfill any *other* routine condition of community supervision. *Id.*

The Court of Criminal Appeals disagreed, first explaining that when the trial court in *Wiley* initially placed the appellant on community supervision, it did not order the reimbursement of attorney fees *only* as a condition of community supervision. *Id.* at 319-

20. Instead, "the specific terms of the judgment (rightly or wrongly) included as court costs the reimbursement of appointed attorney fees." *Id.* at 320. In other words, when the trial court initially placed the appellant on community supervision, it ordered the reimbursement of attorney fees not only as a condition of community supervision but also as an independent obligation under the initial judgment. *See id.* at 319-20. The Court of Criminal Appeals then explained that the record showed that the appellant was aware of the requirement that he pay court costs, including the cost of his court-appointed attorney fees, even as of the time that he signed the original judgment, and was also well aware of the amount of the cost of his court-appointed attorney fees during the plea proceedings. *Id.* at 320-21. The Court of Criminal Appeals therefore concluded that the appellant could readily have raised his challenge to the sufficiency of the evidence to support the order that he pay for his court-appointed attorney for the initial plea proceedings in a direct appeal from the initial judgment imposing community supervision and that the appellant would have known to raise the sufficiency claim at the time of any direct appeal from the initial judgment. *Id.* Failing to do so constituted a forfeiture of the claim. *Id.*

Similarly, in *Riles*, the trial court appointed counsel for the appellant after finding her to be indigent. 452 S.W.3d at 334. The appellant thereafter pleaded guilty, and the trial court deferred her adjudication and placed her on community supervision. *Id.* The appellant had signed plea papers, admonishing her that there would be mandatory costs of community supervision, including court costs and court-appointed attorney fees, and that by "entering this Plea and Disposition Agreement," she was affirming to the trial

court that she had the financial resources to pay the costs associated with community supervision. *Id.* The appellant had also signed an application for community supervision that stated that if she were granted community supervision, she would "reimburse the county in which the prosecution was instituted for compensation paid to appointed counsel for defending [her] in the case." *Id.* Finally, the same day that she pleaded guilty, the appellant also signed the order of deferred adjudication, which stated that she was ordered to pay "all court costs including Court Appointed Attorney Fee." *Id.* The order further stated, "Court Costs: see attached." *Id.* Sixteen days later, the district clerk's bill of costs issued, listing $1,000 for the court-appointed attorney fee. *Id.* at 334-35.

The State in *Riles* subsequently moved to proceed with an adjudication of the appellant's guilt and to revoke her community supervision. *Id.* at 335. About one year later, the trial court then signed a judgment adjudicating the appellant's guilt. *Id.* The judgment also included an order for the appellant to pay all fines, court costs, and restitution "as indicated on the attached Bill of Costs." *Id.* The next day, the district clerk issued the updated bill of costs, which cited the $1,000 assessment for "Attorney Fee(s) — Original Plea Agreement." *Id.*

The appellant in *Riles* appealed from the judgment adjudicating guilt, "arguing that the trial court erred in ordering her to pay the attorney fee without any evidence that she had the ability to pay it." *Id.* The court of appeals, however, relying in part on *Wiley*, held that the appellant had forfeited her complaint by not raising it in an appeal from the initial order of deferred adjudication. *Id.* (citing *Riles v. State*, 417 S.W.3d 606, 607 (Tex. App.—Amarillo 2013), *aff'd*, 452 S.W.3d at 333). The appellant subsequently filed a

petition for discretionary review in the Court of Criminal Appeals. *Id.* at 336. She argued that although she agreed that *Wiley* requires that challenges to attorney fees that are assessed as a condition of community supervision be brought up on an appeal from the original imposition of the community supervision, the requirement is conditioned on the defendant having knowledge of both the existence and amount of the attorney fee, neither of which she had. *Id.*

The Court of Criminal Appeals explained that "*Wiley* does, in fact, premise procedural default on an appellant's knowledge of, and failure to challenge, an issue." *Id.* at 337. It determined, however, that, contrary to appellant's argument, the record in *Riles* reflected multiple points where the appellant acknowledged the obligation to pay the attorney fee. *Id.* For instance, when the trial court initially deferred the appellant's adjudication and placed her on community supervision, it ordered the reimbursement of attorney fees not only as a condition of community supervision but also as court costs, *i.e.*, an independent obligation under the order of deferred adjudication, which the appellant signed. *See id.*; *id.* at 338-39 (Keller, P.J., concurring). The Court of Criminal Appeals therefore concluded that the appellant had knowledge of the attorney fee, and could have challenged the sufficiency of the evidence supporting payment of the fee, at the time of any direct appeal from the initial order for deferred adjudication. *Id.* at 337. The Court of Criminal Appeals explained that the lack of knowledge of the exact amount of the fee was irrelevant because the appellant's argument in *Riles* was "against the assignment of the fee as a whole, not against a portion of it or against a determination that it should be paid as a lump sum versus paid on a payment plan." *Id.* The Court of

Criminal Appeals held that the appellant therefore forfeited her challenge to the assignment of the fee because she did not raise the claim in a direct appeal of the deferred adjudication order. *Id.*

The cases before us are distinguishable, however, from *Wiley* and *Riles* because the trial court in these cases initially ordered the reimbursement of court-appointed attorney fees *only* as conditions of community supervision. The trial court did not initially order the reimbursement of attorney fees in these cases as court costs or independent obligations under the judgments adjudicating Summers's guilt.[2]

At the end of the April 2016 hearing on the State's motions to proceed to adjudications of guilt in these cases, the trial court stated that "an additional expense to the term[s] and condition[s] of [Summers's] probation" was that he had "to pay the county back for the work that [his attorney] did." The trial court then specified, "Total of $450. $350 in [the evading-arrest case], another $100 in [the possession-of-a-prohibited-weapon case] and those are in addition to the other assessments." The trial court never asserted that the attorney fees were being imposed as court costs or as independent obligations, and the trial court never referenced a bill of costs. Therefore, at that time, the trial court had ordered the reimbursement of attorney fees *only* as conditions of Summers's community supervision.

---

[2] For these reasons, this Court's opinion in *Hall v. State*, 494 S.W.3d 390 (Tex. App.—Waco 2015, no pet.), is also distinguishable. *Hall* involves a fine and restitution that were imposed in the original judgment and then "carried forward" into the judgment revoking the appellant's community supervision. *Id.* at 392.

On the same day as the hearing, the trial court signed the written judgments adjudicating Summers's guilt. The judgment in each case shows the assessment of a $1,000 fine, just as the trial court orally pronounced at the hearing, and the judgment in each case shows that Summers was ordered to pay court costs in the specific amount of $219. The judgments do not show that Summers was ordered to pay attorney fees as court costs or as independent obligations, nor do the judgments make reference to a bill of costs.[3] Instead, the judgments incorporate by reference the orders setting forth the terms and conditions of community supervision, which were also signed by the trial court that day. And in accordance with what the trial court stated at the hearing, the orders require Summers to pay a "COURT-APPOINTED ATTORNEY FEE in the amount of $350.00" in the evading-arrest case and "in the amount of $100.00" in the possession-of-a-prohibited-weapon case as conditions of his community supervision. The orders setting forth the conditions of community supervision do not indicate that Summers was ordered to also pay attorney fees as court costs or as independent obligations under the judgments, nor do the orders make reference to a bill of costs. Therefore, at that time, the trial court confirmed that the reimbursement of attorney fees had been ordered *only* as

---

[3] The judgment adjudicating Summers's guilt in the evading-arrest case includes a section that provides: "<u>Terms of Plea Bargain</u>: (24) TWENTY-FOUR MONTHS IN STATE JAIL DIVISION, TDCJ PROBATED FOR FIVE (5) YEARS, WITH ALL FEES ON DEFERRED CASE FORWARDED, $350.00 ATTORNEY FEES, ADDITIONAL 50 HRS. CSR." Similarly, the judgment adjudicating Summers's guilt in the possession-of-a-prohibited-weapon case includes a section that provides: "<u>Terms of Plea Bargain</u>: (24) TWENTY-FOUR MONTHS IN INSTITUTIONAL DIVISION, TDCJ PROBATED FOR FIVE (5) YEARS, WITH ALL FEES ON DEFERRED CASE FORWARDED, $100.00 ATTORNEY FEES, ADDITIONAL 50 HRS. CSR." These judgments adjudicating Summers's guilt, however, were not reached as a result of plea bargains. Accordingly, the reference in each of these judgments to attorney fees as being a term of a plea bargain does not establish that Summers had been ordered by the trial court to pay attorney fees as independent obligations under the judgments.

conditions of Summers's community supervision. Accordingly, Summers could not have raised or forfeited any complaints about the trial court ordering the reimbursement of attorney fees as an independent obligation because the trial court had not yet ordered such reimbursement.

The next day, the district clerk prepared a bill of costs in each case that included a line item for court-appointed attorney fees, and, for the first time, there was no indication that the requirement to reimburse attorney fees was limited *only* to the conditions of Summers's community supervision. The bill of costs in each case appeared to require the reimbursement of attorney fees as an independent obligation under the judgment. But the State concedes in its brief, and we agree, that the district clerk does not have the authority to assess attorney fees apart from an express order from the trial court. *See In re Daniel*, 396 S.W.3d 545, 549 & n.19 (Tex. Crim. App. 2013). Therefore, the district clerk, in filing the bill of costs in each case, could not have extended the trial court's order and required Summers to reimburse the court-appointed attorney fees not only as conditions of his community supervision but also as independent obligations under the judgments. *See id.* In considering whether Summers forfeited his issues, however, what is more important is that there is nothing in the records of these cases to show that the bills of costs were provided to Summers or his counsel or that Summers or his counsel were notified that bills of costs had been created. *See Riles*, 452 S.W.3d at 337 ("*Wiley* does, in fact, premise procedural default on an appellant's knowledge of, and failure to challenge, an issue."). Thus, we cannot conclude that Summers forfeited his complaints about the trial court ordering the reimbursement of attorney fees as independent obligations by

failing to raise the complaints immediately after the district clerk filed these bills of costs. *See id.*

Instead, we conclude that the first time Summers or his counsel had knowledge that he was ordered to reimburse attorney fees as independent obligations was in April 2017, when the trial court revoked Summers's community supervision. Summers immediately raised his complaints about being ordered to reimburse attorney fees as independent obligations in these appeals. We therefore hold that Summers has not forfeited his complaints about being ordered to repay court-appointed attorney fees as independent obligations under the judgments revoking his community supervision.

Under Code of Criminal Procedure article 26.05(g), a trial court has the authority to order the reimbursement of court-appointed attorney fees only if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided …, including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2017). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Armstrong*, 340 S.W.3d at 765-66 (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Because the trial court had found that Summers was not able to pay anything at the time that it ordered him to pay attorney fees as independent obligations under the judgments revoking his community supervision, the assessment of attorney fees as independent obligations under the judgments was erroneous. *See Cates v. State*, 402 S.W.3d 250, 251-

52 (Tex. Crim. App. 2013). Accordingly, we sustain Summers's first issue in each appeal and modify the bill of costs in each case to delete the court-appointed attorney fees.

## Waiver of Appeal

In his second issue in each of these appeals, Summers contends that the judgment erroneously states that he waived his right to appeal. The State concedes in each appeal that Summers did not waive his appeal and that the written judgment should be modified to so reflect. We agree. We sustain Summers's second issue in each appeal and modify the judgment in each case to delete the statement "Defendant waived appeal."

We affirm the trial court's judgments in these cases as modified.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray dissenting)
Affirmed as modified
Opinion delivered and filed August 1, 2018
Publish
[CR25]

