**Opinion issued February 11, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NOS. 01-20-00226-CR**
**01-20-00227-CR**
**01-20-00228-CR**
**01-20-00229-CR**

————————————

**XSAVIOR RAYON ROBERTS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from 21st District Court**
**Washington County, Texas**
**Trial Court Case Nos. 18,476, 18,305, 18,475, 18,423**

---

## MEMORANDUM OPINION

After appellant Xsavior Rayon Roberts's community supervision was revoked

in four cases, the trial court assessed his punishment at two years' confinement for

a theft conviction[1] and eight years' confinement for three separate burglary-of-a-habitation convictions.[2] Appellant does not challenge his convictions. Instead, in three related issues on appeal, he contends that the trial court erred in assessing certain fines and fees. In a fourth issue, he objects to the deadly-weapon finding in the judgment. In a fifth issue, he contends that the judgment should be reformed to accurately reflect the trial court's findings. And, in a sixth issue, he contends that the *Amended Bill of Costs* in two of the cases erroneously include fines. We modify the judgments and, as modified, affirm.

## BACKGROUND

### *The 2017 Deferred Adjudication*

In October 2017, appellant pleaded guilty to burglary of a habitation. The trial court deferred adjudication of guilt and placed appellant on community supervision for 10 years.

The Bill of Costs for the 2017 judgment (trial court case no. 18,035) provided:

| | |
|---|---|
| $224 | Court Costs |
| $ 50 | Crime Stoppers Fee |
| $ 34 | DNA Testing Fee |
| $400 | Court Appointed Attorney |
| $1500 | Fine |
| **$2230** | **Total** |

---

[1] Trial court case no. 18,476, appellate cause no. 01-20-00226-CR

[2] Trial court case no. 18,035, appellate cause no. 01-20-00227-CR; trial court case no. 18,423, appellate cause no. 01-20-00228-CR; trial court case no. 18,475, appellate cause no. 01-20-00229-CR.

Appellant did not appeal the 2017 judgment.

***The 2018 Convictions***

In October 2018, the State moved to revoke appellant's deferred adjudication on the first burglary-of-a-habitation conviction (trial court case no. 18,035) and charged him with three additional offenses (theft of a firearm, trial court case no. 18,476) (burglary of a habitation, trial case court no. 18,423) (burglary of a habitation, trial court case no. 18,475).

Pursuant to a plea agreement, appellant pleaded true to the motion to adjudicate guilt in the 2017 case and guilty in the three new 2018 cases. The trial court assessed punishment at 10 years' confinement on the original burglary-of-a-habitation conviction and on the two new burglary-of-a-habitation charges, which it then probated, placing appellant on community supervision for 10 years. The trial court assessed punishment at two years' confinement on the theft charge, which it then probated, placing appellant on community supervision for five years. All sentences were to run concurrently.

The Bills of Costs for the 2018 convictions provided:

Burglary of a Habitation (case no. 18,035)
$224  Court Costs
$ 25  Crime Stoppers Fee[3]

---

[3] In case no. 18,035, the only difference between the 2017 Bill of Costs and the 2018 Bill of Costs was a reduction of $25 for the Crime Stoppers Fee.

| $ 34 | DNA Testing Fee |
|------|---------|
| $400 | Court Appointed Attorney |
| $1500 | Fine |
| **$2208** | **Total** |

Theft of a Firearm (case no. 18,476)

| $224 | Court Costs |
|------|---------|
| $ 50 | Crime Stoppers Fee |
| $ 34 | DNA Testing Fee |
| $ 25 | Time Payment Fee |
| $200 | Court Appointed Attorney[4] |
| **$533** | **Total** |

Burglary of a Habitation (case no. 18,475)

| $224 | Court Costs |
|------|---------|
| $ 50 | Crime Stoppers Fee |
| $ 34 | DNA Testing Fee |
| $ 25 | Time Payment Fee |
| $200 | Court Appointed Attorney |
| **$533** | **Total** |

Burglary of a Habitation (case no. 18,423)

| $224 | Court Costs |
|------|---------|
| $ 50 | Crime Stoppers Fee |
| $ 34 | DNA Testing Fee |
| $ 25 | Time Payment Fee |
| $200 | Court Appointed Attorney |
| $500 | Fine |
| **$1033** | **Total** |

Appellant did not appeal the 2018 judgments or otherwise complain about the costs on appeal.

---

[4] At the 2018 plea hearing, appellant's counsel noted that some of the fees and costs appeared duplicative, and the trial court agreed to lower the attorney's fee in the three new cases from $400 to $200. No further objection to the fees and costs was made and no appeal was taken therefrom.

*The 2020 Convictions*

In August 2019, the State moved to revoke community supervision in all four cases. After a hearing, the trial court found that appellant had violated Conditions 2, 4, and 17 of his community supervision as follows:

Condition 2: failing to abstain from the use of narcotics or drugs (case nos. 18,035, 18,423, 18,475 and 18,476)

Condition 4: failing to report as required (case nos. 18,035, 18,423, 18,475, and 18,476).

Condition 17: failing to perform community service (case nos. 18,035 and 18,423).

The trial court did not revoke appellant's community supervision based on violations of Condition 10 of his community supervision, which required appellant to pay fines and fees previously assessed.

Based on these violations of the terms of his community supervision, the trial court revoked appellant's community supervision in all four cases and assessed his punishment at eight years' confinement on the three burglary-of-a-habitation convictions and two years' confinement on the theft case, all to run concurrently.

The *Amended Bill of Costs* in each 2020 case is identical to the Bills of Costs in the 2018 cases, except that the Crime Stoppers Fee in the original burglary case (no. 18,035) was raised from $25 to $50 so that it was once again consistent with the bill of costs in the original 2017 case.

**CHALLENGES TO COSTS AND FEES IN THE 2020 BILLS OF COSTS**

In three issues, appellant challenges the assessment of several fees and costs in each 2020 *Amended Bill of Costs*.

***Duplicative costs and fees***

In issue one, appellant contends that "[t]he trial court erred by assessing Court Costs, a Crime Stoppers Fee, a DNA Testing Fee, and a Time Payment Fee independently in all four convictions, since by law court costs and miscellaneous fees may only be assessed once when a defendant is convicted of multiple offenses presented in a since criminal action." In issue two, appellant contends that the Time Payment Fee in the 2020 amended bill of costs should have been $15 rather than $25. Finally, in issue three, appellant contends that "the trial court erred by assessing attorney's fees in each of the four cases, when the record indicates that Appellant was indigent and lacked the financial resources to pay." The State responds to all three issues by arguing that "because Appellant waited until the revocation of his probation to make these complaints, he has procedurally waived them." We agree with the State.

In *Summers v. State*, the appellate court very thoroughly discussed two Texas Court of Criminal Appeals cases that are relevant to the issue of procedural forfeiture:

> [T]he State relies on *Wiley v. State*, 410 S.W.3d 313 (Tex. Crim. App. 2013), and *Riles v. State*, 452 S.W.3d 333 (Tex. Crim. App. 2015) [to

support its position that appellant's objection to the fees has been waived]. In *Wiley*, after finding the appellant indigent and appointing him counsel, the trial court accepted the appellant's guilty plea, entered pursuant to a plea agreement, and pronounced his sentence. 410 S.W.3d at 314. The trial court, however, suspended the sentence and placed the appellant on community supervision. *Id.* On the same date, the trial court entered the written judgment, which included an assessment of court costs in the amount of $898. *Id.* The judgment also incorporated the appellant's conditions of community supervision, and, in a declaration signed by the appellant that appeared on the last page of the judgment, the appellant acknowledged that the conditions of community supervision had been read and explained to him and that he understood them. *Id.* at 314-15. The conditions expressly included a requirement that the appellant pay, as court costs, all court-appointed attorney fees, which was then followed by the statement in bold, capital letters, "SEE THE ATTACHED BILL OF COSTS." *Id.* at 314-15 & n.3. The bill of costs was attached to the judgment and indicated that it had been printed on the same day that the trial court entered the judgment. *See id.* at 314-15. It itemized the particulars of the court costs, which included a $400 cost for the appellant's court-appointed attorney during the plea proceedings. *Id.* at 315.

About two months later, the State in *Wiley* moved to revoke the appellant's community supervision. *Id.* After again finding the appellant indigent and appointing him counsel, the trial court conducted a hearing on the State's motion and then revoked the appellant's community supervision. *Id.* The trial court entered the written judgment on the same day. *Id.* A new bill of costs itemizing the appellant's total court costs was then printed the next day. *Id.* The court costs included the unpaid $400 balance for the court-appointed attorney who represented the appellant when the trial court initially placed him on community supervision. *Id.*

The appellant in *Wiley* thereafter appealed, complaining for the first time that the evidence had been insufficient to support the order that he pay for his court-appointed attorney for the initial plea proceedings. *Id.* at 314. The appellant argued that he had not forfeited his complaint by failing to raise it in an appeal immediately following his placement on community supervision because he was not appealing from the original order imposing the reimbursement of appointed

7

attorney fees as a condition of his community supervision. *Id.* at 319. The appellant contended that he was instead "appealing the later revocation order, which improperly *reiterated* the requirement that he reimburse his appointed attorney fees even though he would no longer enjoy the benefits of community supervision." *Id.* The appellant claimed that, without the addition of that explicit requirement in the revocation order, he would not have been expected to reimburse those fees any more than he would have been expected to continue to fulfill any *other* routine condition of community supervision. *Id.*

The Court of Criminal Appeals disagreed, first explaining that when the trial court in *Wiley* initially placed the appellant on community supervision, it did not order the reimbursement of attorney fees *only* as a condition of community supervision. *Id.* at 319-20. Instead, "the specific terms of the judgment (rightly or wrongly) included as court costs the reimbursement of appointed attorney fees." *Id.* at 320. In other words, when the trial court initially placed the appellant on community supervision, it ordered the reimbursement of attorney fees not only as a condition of community supervision but also as an independent obligation under the initial judgment. *See id.* at 319-20. The Court of Criminal Appeals then explained that the record showed that the appellant was aware of the requirement that he pay court costs, including the cost of his court-appointed attorney fees, even as of the time that he signed the original judgment, and was also well aware of the amount of the cost of his court-appointed attorney fees during the plea proceedings. *Id.* at 320-21. The Court of Criminal Appeals therefore concluded that the appellant could readily have raised his challenge to the sufficiency of the evidence to support the order that he pay for his court-appointed attorney for the initial plea proceedings in a direct appeal from the initial judgment imposing community supervision and that the appellant would have known to raise the sufficiency claim at the time of any direct appeal from the initial judgment. *Id.* Failing to do so constituted a forfeiture of the claim. *Id.*

Similarly, in *Riles*, the trial court appointed counsel for the appellant after finding her to be indigent. 452 S.W.3d at 334. The appellant thereafter pleaded guilty, and the trial court deferred her adjudication and placed her on community supervision. *Id.* The appellant had signed plea papers, admonishing her that there would be mandatory costs of community supervision, including court costs and court-appointed

8

attorney fees, and that by "entering this Plea and Disposition Agreement," she was affirming to the trial court that she had the financial resources to pay the costs associated with community supervision. *Id.* The appellant had also signed an application for community supervision that stated that if she were granted community supervision, she would "reimburse the county in which the prosecution was instituted for compensation paid to appointed counsel for defending [her] in the case." *Id.* Finally, the same day that she pleaded guilty, the appellant also signed the order of deferred adjudication, which stated that she was ordered to pay "all court costs including Court Appointed Attorney Fee." *Id.* The order further stated, "Court Costs: see attached." *Id.* Sixteen days later, the district clerk's bill of costs issued, listing $1,000 for the court-appointed attorney fee. *Id.* at 334-35.

The State in *Riles* subsequently moved to proceed with an adjudication of the appellant's guilt and to revoke her community supervision. *Id.* at 335. About one year later, the trial court then signed a judgment adjudicating the appellant's guilt. *Id.* The judgment also included an order for the appellant to pay all fines, court costs, and restitution "as indicated on the attached Bill of Costs." *Id.* The next day, the district clerk issued the updated bill of costs, which cited the $1,000 assessment for "Attorney Fee(s)—Original Plea Agreement." *Id.*

The appellant in *Riles* appealed from the judgment adjudicating guilt, "arguing that the trial court erred in ordering her to pay the attorney fee without any evidence that she had the ability to pay it." *Id.* The court of appeals, however, relying in part on *Wiley*, held that the appellant had forfeited her complaint by not raising it in an appeal from the initial order of deferred adjudication. *Id.* (citing *Riles v. State*, 417 S.W.3d 606, 607 (Tex. App.—Amarillo 2013), *aff'd*, 452 S.W.3d at 333). The appellant subsequently filed a petition for discretionary review in the Court of Criminal Appeals. *Id.* at 336. She argued that although she agreed that *Wiley* requires that challenges to attorney fees that are assessed as a condition of community supervision be brought up on an appeal from the original imposition of the community supervision, the requirement is conditioned on the defendant having knowledge of both the existence and amount of the attorney fee, neither of which she had. *Id.*

9

The Court of Criminal Appeals explained that "*Wiley* does, in fact, premise procedural default on an appellant's knowledge of, and failure to challenge, an issue." *Id.* at 337. It determined, however, that, contrary to appellant's argument, the record in *Riles* reflected multiple points where the appellant acknowledged the obligation to pay the attorney fee. *Id.* For instance, when the trial court initially deferred the appellant's adjudication and placed her on community supervision, it ordered the reimbursement of attorney fees not only as a condition of community supervision but also as court costs, *i.e.*, an independent obligation under the order of deferred adjudication, which the appellant signed. *See id.*; *id.* at 338-39 (Keller, P.J., concurring). The Court of Criminal Appeals therefore concluded that the appellant had knowledge of the attorney fee, and could have challenged the sufficiency of the evidence supporting payment of the fee, at the time of any direct appeal from the initial order for deferred adjudication. *Id.* at 337. The Court of Criminal Appeals explained that the lack of knowledge of the exact amount of the fee was irrelevant because the appellant's argument in *Riles* was "against the assignment of the fee as a whole, not against a portion of it or against a determination that it should be paid as a lump sum versus paid on a payment plan." *Id.* The Court of Criminal Appeals held that the appellant therefore forfeited her challenge to the assignment of the fee because she did not raise the claim in a direct appeal of the deferred adjudication order. *Id.*

*Summers v. State*, 555 S.W.3d 844, 850–52 (Tex. App.—Waco 2018, no pet.).

We believe that the reasoning of *Wiley* and *Riles* compels the conclusion that appellant procedurally forfeited his right to challenge the fees and costs complained about in issues one through three. We begin by noting that the 2018 Bills of Costs were issued the same day as the 2018 judgments, and the 2020 *Amended Bill[s] of Costs* are almost identical.[5] No new fees or costs are imposed in 2020; indeed,

---

[5] As noted earlier, in the original case, no. 18.035, the 2018 Bill of Cost provided for a $25 Crime Stoppers Fee, while the *2020 Amended Bill of Costs* provided for a $50

appellant's probation officer testified that appellant never paid any of the costs and fees associated with the 2018 judgments. The fees and costs in the 2020 *Amended Bills of Costs* are those assessed in 2018. Thus, the issue is whether appellant had knowledge of, and failed to challenge on appeal in 2018, the fees and costs he attempts to challenged here. *See Riles*, 452 S.W.3d at 337.

As in both *Wiley* and *Riles*, the 2018 judgments included court costs and attorney's fees as independent obligations under the judgments. *See Wiley*, 410 S.W.3d 319—320; *Riles*, 452 S.W.3d at 337. And, as in *Riles*, the plea papers[6] from the 2018 pleas include an acknowledgment by appellant that he owes the fines and fees challenged in this case. Finally, as in *Riles*, the *Conditions of Probation/Community Supervision* in each of appellant's 2018 cases required that he "[p]ay your fine, if one be assessed, and the costs of Court, in one or several sums, and make restitution or reparation in any sum that the Court shall determine[,]"

---

Crime Stoppers Fee. This change, however, made the 2020 *Amended Bill of Costs* identical to the 2017 Bill of Cost from the proceeding placing appellant on deferred adjudication. As such, the 2020 *Amended Bill of Costs* is identical to the very first Bill of Costs generated in the case.

[6]  In three of the four cases, the plea papers signed by appellant state: "The Defendant understands that the Defendant will be obligated to pay all court order monies, including, but not limited to, fines, restitution, court costs, community supervision fees, crime stopper fees, hot check fees, drug fees, EMS fees, DNA fees, and/or court appointed attorney fees." In the fourth case, the plea papers signed by appellant show that he acknowledges that he would be required to pay court costs, court-appointed attorney fees, and a crime stoppers fee.

followed by the total amount payable in each case, which matches the total amount payable in both the 2018 Bill of Costs and the 2020 *Amended Bill of Costs*.[7]

Because appellant knew in 2018 about the fees and costs challenged today but did not appeal until his community supervision was revoked in 2020, he has procedurally forfeited his right to complain about those same fees and costs now. *See Riles*, 452 S.W.3d at 338 ("Because of Appellant's knowledge of the issue of the attorney fee and her failure to appeal it from the original imposition of her deferred adjudication, she procedurally defaulted the issue and cannot now revive it").

Accordingly, we overrule issues one through three.

## DEADLY-WEAPON FINDINGS

In issue four, appellant contends the "*Judgment[s] Revoking Community Supervision* in Cause Numbers 18,035, 18,423, and 18,475 [the burglary convictions] should be reformed to delete any and all entries directly under the printed block indicating "Findings on Deadly Weapon." Specifically, appellant points out that on all three *Judgment[s] Revoking Community Supervision*, under a subheading entitled "Findings on Deadly Weapon," the judgments say "FOUND

---

[7]   The only difference in the amount given in the 2018 Conditions of Probation and the 2018 Bills of Costs is that the Bills of Costs reflect the trial court's agreement to lower the attorney's fee in three of the cases and the Conditions of Probation, which were drafted before that occurred, do not.

12

TRUE TO CONDITIONS 2,4, 17" or "FOUND TRUE TO CONDITIONS 2, 4."

Presumably these were references to the conditions of community supervision that

the trial court found had been violated; the State agrees that there was no deadly

weapon alleged or found to be true in any of these cases.

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court

judgment 'to make the record speak the truth when [they] ha[ve] the necessary data

and information to do so, or make any appropriate order as the law and nature of the

case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st

Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—

Dallas 1991, pet. ref'd)); TEX. R. APP. P. 43.2(b). This power includes the power to

delete a deadly-weapon finding that was erroneously entered in the trial court's

written judgment. *Cobb v. State*, 95 S.W.3d 664, 668 (Tex. App.—Houston [1st

Dist.] 2002, no pet.); *see also Garcia v. State*, No. 01-15-00030-CR, 2016 WL

7011411, at *11–12 (Tex. App.—Houston [1st Dist.] Dec. 1, 2016, pet. ref'd) (mem.

op., not designated for publication).

Thus, we sustain issue four, and we modify the *Judgment Revoking

Community Supervision* in cause nos. 18,0354, 18,423, and 18,475 to delete the

language under the heading "Findings on Deadly Weapon" and insert the language

"not applicable" in their stead. *See Duran v. State*, 492 S.W.3d 741, 750 (Tex. Crim.

App. 2016) (modifying trial court's judgment to delete improperly entered deadly-weapon finding); *Garcia*, 2016 WL 7011411, at *11–12 (same).

## REFORMATION OF JUDGMENTS—EXHIBIT A

In issue five, appellant contends that "Exhibit 'A' in each individual *Judgment Revoking Community Supervision* should be reformed to comport with the actual findings announced by the trial court on the record in open court." Appellant points out that each Exhibit A recites *all* of the allegations in the Motions to Revoke Community Supervision and not just the allegations that the trial court found to be true at the hearing.

The State agrees that Exhibit A for each *Judgment Revoking Community Supervision* should be modified "to comport with the actual findings announced by the trial court on the record in open court." Because this Court has the authority and necessary information to modify the judgments to "speak the truth," *see French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992), we sustain issue five and we modify Exhibit A to each judgment as follows:

> Case No. 18,476—delete reference to violation of Condition 10
> of Community Supervision
>
> Case No. 18,035—delete reference to violation of Condition 10
> of Community Supervision
>
> Case No. 18,423—delete references to violation of Condition 10
> of Community Supervision

Case No. 18,475—delete reference to violation of Conditions 10 and 11 of Community Supervision

## REFORMATION OF AMENDED BILL OF COSTS

In issue six, appellant contends that "[t]he trial court erred by including a fine in the *Amended Bill of Costs* documents in trial court cause numbers 18,035 and 18,423." Specifically, in these two cases, the *Judgment Revoking Community Supervision* contains a fine as a part of the punishment, and, the *Amended Bill of Costs* includes a line-item of a slightly different amount for "Fines." Appellant contends that, because a fine is a part of a defendant's sentence, a fine should not have been included in the *Amended Bill of Costs*. The State "agrees the fines should not be included in the amended bills of costs."

While fines are punitive and a part of a convicted person's sentence, court costs are non-punitive and intended to recoup judicial resources expended in connection with the trial of the case. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). A bill of costs must contain "items of cost." TEX. CODE CRIM. PROC. art. 103.001(b). As such, a fine cannot be included in the bill of costs. *See, e.g.*, *Williams v. State*, 495 S.W.3d 583, 591 (Tex. App.—Houston [1st Dist.] 2016, pet. dism'd).

Here, the trial court assessed a fine for each of appellant's convictions, which was included in the *Judgment Revoking Community Supervision*, but the *Amended Bill of Costs* in cause numbers 18,035 and 18,423 also included a fine. Because a

15

fine is punitive and cannot be included in the bill of costs, we sustain appellant's sixth issue and delete the fine from the *Amended Bill of Costs* in cause numbers 18,035 and 18,423. *See id.* Appellant remains obligated to pay the fine as reflected in the judgments of conviction. *See id.*

## CONCLUSION

We affirm the trial court's judgments as hereinabove modified.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).