

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00386-CR

TAWONA SHARMIN RILES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 59,309-E, Honorable Douglas Woodburn, Presiding

October 7, 2013

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Tawona Sharmin Riles, appeals her conviction for possessing a controlled substance with intent to deliver. Upon her pleading guilty, the adjudication of her guilt was deferred, and the trial court placed her on community supervision. Subsequently, the State filed a motion to adjudicate guilt, which motion the trial court granted. Thereafter, it sentenced her to a seven year prison term and "order[ed] [her] to pay all fines, court costs, and restitution as indicated in attached Bill of Cost." The question before us involves the attorney's fees that appellant was directed to pay (via

the judgment deferring her adjudication of guilt) as a condition of her community supervision. Appellant was originally found indigent and granted appointed counsel. Furthermore, the record contains no evidence indicating that she had the ability to pay such fees when ordered to so pay them. And, it was only those fees which were encompassed in the bill of cost that issued upon the adjudication of her guilt and final sentencing. We are asked whether the trial court erred in ordering payment of those fees without receiving evidence that appellant had the ability to pay them. Our answer is that the claim was forfeited.

In reaching our conclusion we rely upon the most recent Court of Criminal Appeals exposition on the matter, *Wiley v. State*, No. PD-1728-12, 2013 Tex. Crim. App. LEXIS 1464 (Tex. Crim. App. September 25, 2013). Upon his plea of guilty, the trial court sentenced Wiley, suspended the sentence, and placed him on community supervision. He was also ordered to pay attorney's fees as a condition of his probation despite being deemed an indigent at the inception of the prosecution. Eventually, the trial court revoked his community supervision, sentenced him, and ordered him to pay the attorney's fees assessed when previously granted probation, among other things. Appellant objected to the payment of those fees because the evidence allegedly was insufficient to illustrate that he had the ability to pay them. *See Cates v. State*, 402 S.W.3d 250, 251-52 (Tex. Crim. App. 2013) (stating that a defendant who was found to be indigent may later be ordered to pay for the fees incurred by his appointed counsel upon proof that he has the ability to pay them). The Court of Criminal Appeals rejected the argument, however. As explained by the court:

> the appellant could readily have raised this sufficiency claim in a direct
> appeal from the initial judgment imposing community supervision. Failing

2

to do so, we hold, constituted a procedural default under [*Manuel v. State,* 994 S.W.2d 658 (Tex. Crim. App. 1999)]. The record in this case shows that the appellant was well aware of the existence and the amount of the attorney fees that were imposed for his court appointed representation during the plea proceedings. The bill of costs was dated the same day as the judgment imposing community supervision and was, by the terms of the judgment itself--as indicated in bold capital letters--attached. By his signature, the appellant expressly acknowledged having read and understood the conditions of community supervision. Under these circumstances, the presumption of regularity applies, and we must conclude that the appellant was aware of the requirement that he pay court costs, including the cost of court appointed attorney fees, even as of the time he signed the judgment. He would therefore have known to challenge the sufficiency of the evidence to support this requirement as of the time of any direct appeal from that judgment.

Instead of doing so, he waived his right to appeal, though not required to do so by the terms of any negotiation with the State. Whatever else could be said about such a waiver of appeal, it was certainly executed knowingly with respect to any possible claim that the record did not support the assessment of attorney fees. That he chose to forego that appeal must work as a forfeiture of the claim, and he may not, consistent with our case law, attempt to resuscitate it in a later appeal from the revocation of his community supervision.

*Id.,* at *21-22.

*Manuel* involved effort by the appellant to raise questions relating to his original plea hearing after his probation had been revoked. *Manuel v. State*, 994 S.W.2d 658 (Tex. Crim. App. 1999). That is, Manuel had pled guilty. The trial court accepted the plea but opted to defer the adjudication of his guilt. Instead, it granted him community supervision or probation. Upon Manuel violating a term of that supervision, the trial court revoked his probation, adjudicated his guilt for the crime to which he pled guilty and assessed punishment. He then appealed, contending that "the evidence adduced at the original plea proceeding had been insufficient to prove his guilt." *Id.* at 660. The Court of Criminal Appeals framed the issue before it as: "[i]f a defendant pleads guilty to

3

a felony offense, is placed on deferred adjudication community supervision, and is later adjudicated guilty, may he then, on appeal, complain of error in the original plea proceeding?" *Id.* at 659. Before answering, the court noted that "defendants [were entitled] to appeal from deferred adjudication community supervision to the same extent (*i.e.*, with the same rights and restrictions) as defendants [we]re permitted to appeal from 'regular' community supervision." *Id.* at 661. It then added the observation that "a defendant placed on 'regular' community supervision may raise issues relating to the conviction, *such as evidentiary sufficiency*, only in appeals taken when community supervision is originally imposed . . . [t]hat is, such issues may not be raised in appeals filed after 'regular' community supervision is revoked." *Id.* (emphasis added). And, these observations led the court to

> hold that this rule also applies in the deferred adjudication context. In other words, a defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding, *such as evidentiary sufficiency*, [emphasis added] only in appeals taken when deferred adjudication community supervision is first imposed. Certainly, it was not the Legislature's intent, in enacting Article 44.01(j), to permit *two* reviews of the legality of a deferred adjudication order, one at the time deferred adjudication community supervision is first imposed and another when, and if, it is later revoked.

*Id.* at 662. Simply put, Manuel could have questioned the sufficiency of the evidence substantiating his guilt immediately after having the adjudication of his guilt deferred and being placed on community supervision. Rather than do so, he waited to complain until his probation was revoked and the trial court convicted him. That resulted in his forfeiting the issue. *Id.*

Here, like the defendant in *Manuel,* appellant had the adjudication of her guilt deferred. So too was she placed on community supervision. Appearing in the order

4

manifesting that decision was the obligation for appellant to pay attorney's fees.[1] Furthermore, she and her attorney acknowledged the obligation in the plea admonishments and waivers signed by both as well as in her application for probation signed by appellant. Though she could have appealed from that decision and questioned the sufficiency of the evidence underlying the obligation to pay such fees, she did not. Instead, she waited to do so until after the trial court revoked her probation, adjudicated her guilt, and levied sentence. To conform to both *Wiley* and *Manuel,* we cannot but hold that the delay caused appellant to forfeit the claim now before us.

The dissent places great emphasis on that portion of *Wiley* illustrating that the appellant there had notice of the obligation to pay attorney's fees. Admittedly, the *Wiley* panel did make such observations after concluding that he had procedurally defaulted *a la Manuel.* Why such a discussion was undertaken is unknown. *Manuel* said nothing

---

[1] We note that in the record are plea admonishments and waivers signed by appellant and her attorney that contain the following language:

> The defendant understands that in addition to any sentence imposed by the Court there are mandatory costs of Community Supervision, including but not limited to: Costs of Court, Community Supervision fees (up to $60 per month), restitution to the victim(s), payments for DPS Lab ($140), **fees for court appointed attorney**, fees related to testing and treatment, payments to Crime Victims Compensation Fund (up to $100), payments to Crime Stoppers ($50), payments to The Bridge Children Advocacy Center, electronic monitoring, and classes/instruction related to their specific needs as may be ordered by their probation officer or the Court.

> ***By entering this Plea and Disposition Agreement the defendant affirmatively states to the Court that he/she has the financial resources to pay the costs associated with Community Supervision*** in their specific case and that their personal financial situation is expected to be stable throughout the term of Community Supervision. The defendant understands that it is the obligation of the defendant to notify his / her probation officer of any significant change in his / her financial situation that would impact his / her ability to pay the fees and costs associated with Community Supervision.

> (Emphasis added).

We, further, note that appellant was also advised of the payment of attorney's fees in her signed application for probation. Given this information, the obligation to pay attorney's fees was quite obvious at the time appellant received deferred adjudication.

about forfeiting only those issues of which appellant knew at the time he opted to forego appeal once the adjudication of his guilt was deferred. Indeed, precedent from that very court indicates that all non-jurisdictional issues are lost. *See e.g. Daniels v. State* 30 S.W.3d 407, 408 (Tex. Crim. App. 2000). It may well be that the Court of Criminal Appeals wanted to include within the category of jurisdictional error any complaint which could have been appealed when a defendant is given deferred adjudication but of which the defendant may not have known for some reason. But we leave it to that court to clarify its desire, if any. Until it expressly alters or overrules *Manuel* and its progeny, we continue to apply that authority as written.

The judgment is affirmed.

Brian Quinn
Chief Justice

Publish.

Pirtle, J., dissenting.