

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1757-13

**TAWONA SHARMIN RILES, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SEVENTH COURT OF APPEALS
## POTTER COUNTY

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined. KELLER, P.J., filed a concurring opinion in which HERVEY, J., joined. ALCALA, J., filed a concurring opinion. JOHNSON, J., filed a dissenting opinion.

## O P I N I O N

Appellant pled guilty to possession of a controlled substance with intent to deliver. Adjudication was deferred, and Appellant was granted community supervision. After a year and a half, her community supervision was revoked, and she was sentenced to seven years in prison and ordered to pay all of the court costs, including her court appointed attorney fees. Appellant then appealed, arguing that the trial court erred in ordering her to

pay the attorney fees because there was no evidence of her ability to pay. The court of appeals held that this claim was forfeited because she did not raise it in an appeal from the original Order of Deferred Adjudication. *Riles v. State*, 417 S.W.3d 606 (Tex. App.–Amarillo 2013). We granted Appellant's petition for discretionary review to determine whether Appellant forfeited her claim even though the amount and certainty of the attorney fee was unknown to her at the time community supervision was imposed.

## FACTS

Appellant was charged with possession of a controlled substance and appointed counsel after the trial court found her to be indigent. On March 3, 2010, she pled guilty to the offense with no agreed recommendation on punishment. The signed plea papers admonished Appellant that:

> The defendant understands that in addition to any sentence imposed by the Court there are mandatory costs of Community Supervision, including but not limited to: Costs of Court, Community Supervision fees (up to $60 per month), restitution to the victim(s), payments for DPS Lab ($140), fees for court appointed attorney, fees related to testing and treatment, payments to Crime Victims Compensation Fund (up to $100), payment to Crime Stoppers ($50), payments to The Bridge Children Advocacy Center, electronic monitoring, and class/instruction related to their specific needs as may be ordered by their probation officer or the Court.
>
> By entering this Plea and Disposition Agreement the defendant affirmative states to the Court that he/she has the financial resources to pay the costs associated with Community Supervision in the specific case and that their personal financial situation is expected to be stable through out the term of Community Supervision. The defendant understands that it is the obligation of the defendant to notify his/her probation officer of any significant change in his/her financial situation that would impact his/her ability to pay the fees and costs associated with Community Supervision.

Appellant also signed an application for community supervision that stated that if she were granted community supervision, she would "reimburse the county in which the prosecution was instituted for compensation paid to appointed counsel for defending [her] in the case." Finally, Appellant's Order of Deferred Adjudication, which she signed that same day, stated that she was ordered to pay a five-hundred-dollar fine and "all court costs including Court Appointed Attorney Fee." It also stated, "Court Costs: see attached."

The judge granted Appellant deferred adjudication and placed her on community supervision for eight and one half years. The following day, Appellant's attorney submitted an "Attorney Fee Voucher" for $1,000, which was approved. This voucher was filed by the district clerk on March 9, 2010. The district clerk's bill of costs, which lists the $1,000 for the court appointed attorney fee, was issued on March 19, 2010.

No additional filings were made in Appellant's case until August 25, 2011, when the State moved to proceed with adjudication and revoke her community supervision. One year later, on August 23, 2012, a judgment adjudicating guilt against Appellant was signed which included an order for Appellant to pay all fines, court costs, and restitution "as indicated on the attached Bill of Costs." The next day, the district clerk issued the updated bill of costs which cited the $1,000 assessment for "Attorney Fee(s) - Original Plea Agreement."

## COURT OF APPEALS

Appellant filed a notice of appeal from the judgment adjudicating guilt, arguing that the trial court erred in ordering her to pay the attorney fee without any evidence that

she had the ability to pay it. The court of appeals held that she had forfeited this claim by not raising it in an appeal to the order of deferred adjudication. *Riles*, 417 S.W.3d at 607.

In coming to this conclusion, the court of appeals relied on two of our decisions, *Wiley v. State*, 410 S.W.3d 313 (Tex. Crim. App. 2013), and *Manuel v. State*, 994 S.W.2d 658 (Tex. Crim. App. 1999). *Id*. at 607-09. In *Wiley*, the court of appeals explained, the appellant also objected to the order that he pay his court appointed attorney fees upon revocation of his community supervision because the evidence was insufficient to show that he had the ability to pay them. This Court rejected the appellant's claim, stating that, because he was aware of the requirement that he pay the court costs, he would have known to challenge the sufficiency of the evidence at the time and, therefore, forfeited the claim by choosing to not appeal. *Wiley*, 410 S.W.3d at 320-21. In *Manuel*, the appellant pled guilty, his adjudication was deferred, and he was granted community supervision. After this community supervision was revoked, the appellant appealed, arguing that the evidence at the original plea proceeding was insufficient to prove his guilt. *Manuel*, 994 S.W.2d at 660. We held that, exactly like "regular community supervision," a defendant given deferred adjudication community supervision may raise issues related to the plea proceeding only in an appeal taken when the supervision is first imposed. *Id*. at 662.

The court of appeals concluded that these two cases left it no choice but to hold that Appellant forfeited her claim by not making it until her community supervision was revoked. *Riles*, 417 S.W.3d at 609. Although we discussed that the appellant in *Wiley* had

notice of the obligation to pay attorney's fees, the court of appeals declined to interpret that to mean that the issue could have been appealed had the appellant not been aware of the obligation. *Id*. Without an express overruling of *Manuel*, the court of appeals chose to apply it as written. *Id*.

Justice Pirtle dissented, asserting that the procedural default consideration present in *Wiley* and *Manuel* is not present in this case because Appellant did not know the amount of her attorney fee at the time she was placed on deferred adjudication. *Id*. at 612. He argued that it was determined only that Appellant would make some monthly payments and that, expecting to be able to meet this obligation, she would not have needed to appeal this determination. *Id*. at 611. Further, because there was no evidence to support the imposition of the fees, Justice Pirtle would have reformed the judgment against Appellant to specify that "court costs" did not include attorney fees. *Id*. at 612.

Two weeks after this opinion, another bill of costs was issued that reflected an additional $3,185 for attorney fees for the revocation hearing. Appellant filed a motion for rehearing on this issue and others, each relating to fees. The court of appeals denied rehearing because new issues may not be raised through a motion for rehearing. *Riles v. State*, 417 S.W.3d 606 (Tex. App.–Amarillo 2013) (op. on reh'g.). Justice Pirtle again dissented on the issue of attorney's fees, arguing that Appellant should not be barred from raising the issue because the $3,185 did not appear in the original bill of costs. *Id*. at 614.

Subsequently, Appellant filed a petition for discretionary review challenging the

original imposition of the attorney fees. We granted Appellant's petition to determine whether *Wiley v. State* applies where the amount and certainty of the attorney fee are unknown at the time that community supervision is imposed.

## ARGUMENTS OF THE PARTIES

Appellant agrees that *Wiley v. State* requires that challenges to attorney fees that are assessed as a condition of community supervision be brought up on an appeal from the original imposition of the community supervision. However, Appellant argues, this requirement is conditioned on the defendant having knowledge of both the existence and amount of the attorney fee, neither of which the appellant in this case had. Appellant points out that, unlike in *Wiley*, her bill of costs was not issued until 16 days after she was placed on deferred adjudication. Therefore, at the time her community supervision was imposed, she not only did not know the amount of the fee, she also could not be certain that such a fee would even be assessed.

Appellant also points to *Landers v. State*, 402 S.W.3d 252 (Tex. Crim. App. 2013), in which we held that a defendant who was assessed a fee for an appointed prosecutor pro tem after the proceedings had adjourned, was able to complain about the fee on appeal because she never had an original opportunity to object. Appellant asserts that *Landers* was based on the premise that the fee was not imposed in open court, and the appellant and her attorney could not have been assumed to have seen the bill of costs in time to object to it, so no procedural default occurred. Appellant contends that the court of

appeals's decision in her case does not follow the holdings of *Landers* and *Wiley*.

The State, however, argues that Appellant was required to challenge the attorney fee on a direct appeal from the judgment imposing it and that by not doing so, she waived the issue. The State also asserts that Appellant assented to liability for the fee and represented on her plea papers that she had the resources to pay the fees that were made conditions of her community supervision. The fact she did not know the exact monetary amount at the time is of no significance.

The State goes on to point out that the cases that Appellant relies on are distinguishable from her own and do not support her position. *Landers*, for example, did not involve a plea proceeding, there was no discussion of imposing court costs on the appellant at the trial or sentencing, and the appellant was granted a direct appeal. 402 S.W.3d 252. In *Wiley*, the court held that the appellant had procedurally defaulted by failing to appeal at the time he was placed on community supervision. 410 S.W.3d at 320. Further, the State argues, *Wiley* allows Appellant to be charged with the knowledge of the requirement that she pay her attorney fee because she signed documents related to her plea and application for community supervision that discussed the obligation to pay. *Id*. at 320-21.

## ANALYSIS

We agree with the State's position that we can conclude that Appellant had knowledge of the attorney fee and, therefore, could have challenged the sufficiency of the

evidence supporting payment of the fee in a direct appeal from the initial order for deferred adjudication. Because *Manuel* requires that any issue related to the original plea proceeding be taken only in an appeal to the original order of deferred adjudication, we hold that Appellant procedurally defaulted this claim by failing to so. 994 S.W.2d at 661-62.

Contrary to the court of appeals's interpretation, *Wiley* does, in fact, premise procedural default on an appellant's knowledge of, and failure to challenge, an issue. The record in this case reflects multiple points where Appellant acknowledged the obligation to pay the attorney fee. In Appellant's written plea, she signed the section entitled "Court Costs and Fees" which admonished her that there were mandatory costs of community supervision, that could include the fee for her court appointed attorney. Appellant also signed her Application for Community Supervision which stated that she would reimburse the county for the compensation of appointed counsel. Finally, Appellant's Order for Deferred Adjudication, which she signed, specifically indicated that she would be required to pay all court costs including the "Court Appointed Attorney Fee." It also noted on the first page, directly next to where her five-hundred-dollar fine was listed, that for "court costs: see attached." It does not seem to be disputed that the bill of costs was not attached to the order at that time, and Appellant should have taken pause at this. However, she did not. And with her signatures, Appellant expressly acknowledged having read and understood the stipulations of her deferred adjudication community supervision.

With this direct evidence of Appellant's acknowledgment of the existence of the attorney fee, we hold that the lack of knowledge of the exact amount of the fee does not make Appellant's case. The issue brought in her appeal was that there was no evidence of her ability to pay the fee. This is an argument against the assignment of the fee as a whole, not against a portion of it or against a determination that it should be paid as a lump sum versus paid on a payment plan. Because Appellant asserted that there was not sufficient evidence to support the requirement that she pay an attorney fee at all, the dollar amount of the fee would be inconsequential. With the knowledge that she was being directed to pay some attorney fee, she would have known to appeal, regardless of the amount of that fee. Therefore, she did have enough information to have known to challenge the assignment of the fee with a direct appeal to the deferred adjudication order, but failed to do so, and subsequently forfeited her sufficiency claim.

However, even if the specific dollar amount (and not just the existence) of the fee did matter to an appeal, which would require the appellant to wait to see the bill of costs before appealing, the appellant would not simply be left with no options if it were filed late. If the appellant was somehow unable to appeal in time after receiving the bill of costs, the appellant could file for an extension of time. The only requirements to receive an extension are that the notice of appeal be filed within fifteen days of the expiration of the deadline for filing notice and that the party explain the facts that show the need for the extension. TEX. R. APP. P. 26.3. If a bill of costs were filed so late as to cause the

appellant to not be able to appeal it within the specified time period, an extension of time to appeal should be granted.

Here, however, Appellant filed no appeal until her community supervision was revoked two years later. We made clear in *Manuel* and *Wiley* that those issues that an appellant can raise in a direct appeal from the initial judgment must be raised, and that failing to do so results in procedural default. *Manuel*, 994 S.W.2d at 661-62; *Wiley*, 410 S.W.3d at 320-21. Appellant had knowledge that she was to be charged for her appointed attorney fee, as evidenced by the multiple admonishments that she signed, but she forfeited her claim by foregoing her initial appeal.

Our decision today applies only to the $1,000 attorney fee originally imposed when Appellant was placed on deferred adjudication. We make no decision regarding the $3,185 in attorney fees assigned for Appellant's revocation hearing because that amount is not encompassed within the ground upon which we granted review, which addresses only the attorney fee for representation "at the time community supervision is imposed."

## CONCLUSION

Because of Appellant's knowledge of the issue of the attorney fee and her failure to appeal it from the original imposition of her deferred adjudication, she procedurally defaulted the issue and cannot now revive it. Therefore, although the court of appeals misinterpreted *Wiley*, it correctly concluded that Appellant's claim was forfeited and its judgment is affirmed.

Delivered: February 4, 2015

Publish