**Opinion filed June 23, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-20-00239-CR

_____

## CARLOS ENRIQUE HERNANDEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 27779A**

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a 2020 judgment adjudicating Carlos Enrique Hernandez's (Appellant) guilt upon revoking his deferred adjudication community supervision for a 2016 offense of aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2021); TEX. CODE CRIM. PROC. ANN. art. 42A.101 (West 2018). In a January 30, 2019, handwritten pro se application for writ of habeas corpus, Appellant collaterally attacked the original order imposing deferred

adjudication community supervision pursuant to Appellant's guilty plea. He argued that he had received ineffective assistance of counsel in choosing to plead guilty, that he was not guilty of the offense charged and to which he had pleaded guilty, and that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

In his first issue on appeal, Appellant argues that the trial court abused its discretion by not allowing Appellant to present evidence of a *Brady* violation at the punishment hearing—which occurred well after the trial court had revoked Appellant's deferred adjudication community supervision and adjudicated him guilty of the 2016 offense of aggravated assault with a deadly weapon. In his second issue, Appellant collaterally attacks the trial court's order imposing the deferred adjudication community supervision, arguing that the order is void because it is supported by no evidence. In his third and final issue, Appellant argues that the trial court abused its discretion by denying his application for writ of habeas corpus. We affirm.

*Background*

On June 23, 2016, Appellant had a physical altercation with Jason Gomez. The State's information alleged that Appellant came at Gomez "with a knife in his hand." It states that Gomez saw Appellant "holding a knife in his hand" and that Appellant "was holding the knife in his hand as he was striking Gomez." Gomez's brother called the police, and Appellant fled the scene. The information further states that Appellant dropped the knife as he ran away and that "Gomez heard the knife hit the concrete." A knife was located at the scene of the altercation by responding officers with the Abilene Police Department. Appellant was not arrested until March of 2018. An attorney was appointed to represent Appellant on March 9, 2018. On June 28, 2018, a grand jury indicted Appellant for "intentionally, knowingly, and recklessly caus[ing] bodily injury to . . . Gomez by striking him with

2

a knife," alleging that Appellant "use[d] a deadly weapon, to-wit: a knife . . . during the commission of the assault."

On December 7, 2018, Appellant pled guilty, swearing in a written "judicial confession" that he had "read the indictment . . . and committed each and every act alleged [t]herein," that "[a]ll facts alleged in the indictment or information are true and correct," and that "[a]ll deadly weapon allegations are true and correct." The trial court accepted Appellant's guilty plea on December 12, 2018, deferring the adjudication of Appellant's guilt subject to his successful completion of community supervision for a period of ten years. We note that Appellant has not provided us with a reporter's record from the hearing wherein he entered his guilty plea.

On January 22, 2019, the State moved to adjudicate Appellant guilty of the 2016 offense of aggravated assault and to revoke his community supervision. In its motion, the State alleged that Appellant violated his probation by committing another assault with a deadly weapon on January 1, 2019, against Guadalupe Isabele Ramirez. Specifically, Appellant was alleged to have slammed Ramirez's head against a wall, pinned her to the floor, and struck her in the chin with a knife.

While in jail for the aforementioned alleged probation violation, Appellant filed a pro se application for writ of habeas corpus on January 30, 2019, alleging that he was deprived of the effective assistance of counsel in choosing to plead guilty. It also alleged that the State had committed a *Brady* violation by withholding exculpatory evidence. The application for habeas corpus was written by Appellant while he was in jail pursuant to the State's *original* motion to revoke.

On March 14, 2019, the State dismissed its original motion to revoke. This occurred a month and a half *after* Appellant's trial attorney filed a Motion to Set Aside [Guilty] Plea and Dismiss Case, based on the complaints that Appellant had made in the handwritten application for writ of habeas corpus. The record shows that no hearing was held before the trial court on either Appellant's pro se application

for writ of habeas corpus or the aforementioned motion filed by his trial attorney, or that Appellant or his trial attorney ever requested that either or both motions be set for hearing.

A hearing was held on March 26, 2019, on the State's motion to dismiss the original motion to revoke. No transcript of that hearing was provided to us. However, in conjunction with the hearing, the trial court did dismiss the State's original motion to revoke but then also modified the conditions of Appellant's community supervision. With the dismissal of the motion to revoke and the modification of the conditions of Appellant's community supervision, again, there is no record that Appellant or his trial counsel requested a hearing or a formal ruling on Appellant's motion or the referenced application for writ of habeas corpus.

On March 26, 2019, upon the State's motion to dismiss its motion to revoke, the trial court amended the conditions of Appellant's community supervision and ordered that Appellant be transferred to a Substance Abuse Felony Punishment Facility (SAFPF) for treatment. The trial court amended the conditions of Appellant's community supervision several more times, requiring, *inter alia*, that Appellant be transferred to a halfway house—the Clover House—in Odessa after completing the treatment program at SAFPF and that he pay various fees and costs.

On July 28, 2020, the State again moved to adjudicate Appellant guilty of the 2016 offense of aggravated assault and to revoke his community supervision, realleging the January 1, 2019 violations and alleging fourteen additional violations. Among the new violations alleged were multiple failures to refrain from the use of narcotics, multiple failures to pay fees and costs assessed against him, failure to perform community service, and "intentionally flee[ing] . . . persons . . . [he] knew were peace officers who were attempting lawfully to arrest or detain [him][.]"

At the August 13, 2020 hearing on the State's amended motion to revoke, Appellant called no witnesses and presented no evidence. Appellant only cross-

4

examined the State's witnesses. The State's witnesses were Appellant's probation officer and one of the police officers who arrested Appellant pursuant to a warrant issued for violating the conditions of his community supervision. The trial court found that twelve of the State's allegations were true and that Appellant had violated certain terms and conditions of his community supervision. The trial court then adjudicated Appellant guilty of the 2016 offense of aggravated assault with a deadly weapon and revoked his community supervision. The trial court postponed the assessment of punishment, ordered a presentence investigation, and set the case for a subsequent hearing on punishment.

At the subsequent punishment hearing, which was held in October 2020, Appellant testified that he never had a knife during the 2016 altercation with Gomez. He called Gomez as a witness, and Gomez testified that he did not actually see a knife but, rather, assumed that Appellant had a knife based, in part, on the way Appellant approached him with one hand behind his back and, in part, on what responding officers had told him. Appellant also attempted, unsuccessfully, due to the State's objections, to testify as to circumstances supporting his belief that the State committed a *Brady* violation by withholding evidence of Gomez's recantation of prior statements. The trial court assessed Appellant's punishment at nine years imprisonment in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

*Discussion*

"[A] defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding . . . only in appeals taken when deferred adjudication community supervision is first imposed." *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999). Such issues may not be raised in an appeal from an order adjudicating guilt and revoking community supervision. *Id.* Indeed, "an appellant will not be permitted to raise on appeal from

5

the revocation of his community supervision any claim that he could have brought on an appeal from the original imposition of that community supervision." *Wiley v. State*, 410 S.W.3d 313, 319 (Tex. Crim. App. 2013). "[F]ail[ure] to do so results in procedural default." *Riles v. State*, 452 S.W.3d 333, 338 (Tex. Crim. App. 2015). There are, however, two exceptions to the aforementioned rule: (1) the "void judgment" exception and (2) the "habeas corpus" exception. *Nix v. State*, 65 S.W.3d 664, 667 (Tex. Crim. App. 2001). For the reasons articulated below, we hold that neither of these exceptions are applicable here.

I. *The habeas corpus exception is inapplicable; Appellant did not timely attempt to litigate the issues.*

A. *Applicable Law*

"The habeas corpus exception essentially involves the litigation of a writ of habeas corpus at the probation revocation proceedings." *Nix*, 65 S.W.3d at 669. To invoke the habeas corpus exception on appeal, three conditions must hold true. *Id.* at 669–70. First, the appellant must have actually filed an application for writ of habeas corpus prior to the revocation proceeding. *Id.* at 670. Second, the issues raised with respect to the order imposing deferred adjudication community supervision must actually be cognizable on a writ of habeas corpus. *Id.* And finally, the appellant must show that he actually attempted to litigate those issues at the revocation proceeding. *Id.*

B. *Analysis*

Appellant filed a pro se application for writ of habeas corpus on January 30, 2019. In it and in Appellant's motion to set aside his guilty plea, Appellant asserted that he was provided ineffective assistance of counsel in choosing to plead guilty and that the State committed a *Brady* violation by withholding exculpatory evidence. However, Appellant did not "attempt to litigate" the claims asserted in his application for writ of habeas corpus at the hearing on the State's amended motion

6

to revoke. *See Sisk v. State*, No. 2-05-301-CR, 2006 WL 744302, at *1 (Tex. App.—Fort Worth Mar. 23, 2006, pet. ref'd) (mem. op., not designated for publication) (dismissing an appeal where appellant "did not attempt to litigate" his habeas issues at the "proceeding on the State's motion for adjudication of guilt").

At the revocation hearing, trial counsel for Appellant merely cross-examined Appellant's probation officer and the officer who arrested Appellant pursuant to a warrant for violating terms and conditions of his community supervision. Appellant's trial counsel cross-examined the arresting officer about minor inconsistencies between his testimony and his arrest report and whether Appellant's violent reaction to the attempted arrest was reasonable in light of the officer telling Appellant, "I'm going to shoot you." Appellant's probation officer was cross-examined about whether Appellant successfully completed the SAFPF program and whether he was successful during his stay at Clover House .

Appellant did not call his plea attorney as a witness in order to litigate the ineffective assistance issue in his habeas application. Nor did Appellant attempt to litigate the issue of whether the State committed a *Brady* violation. Appellant did not call Gomez to testify and litigate, in any way, the issue of Gomez's recantation of his previous allegations that Appellant used a knife when he attacked Gomez. Notably, at the beginning of the revocation hearing, Appellant announced "not ready" because Gomez was an absent witness. However, when the trial court inquired further, the following exchange took place:

> THE COURT: [Appellant] had issued a subpoena for Jason Gomez and did not announce ready because he was not present.
>
> . . . .
>
> [COUNSEL]: . . . He is a punishment witness, Your Honor.
>
> THE COURT: Right.

[COUNSEL]: We're going to be asking for a PSI from the Court on this, and we may wish to take that up if we get to a punishment phase.

THE COURT: Okay. And so your -- your reason for announcing not ready was because he wasn't here?

[COUNSEL]: That's correct. Yes.

THE COURT: Otherwise, you were ready?

[COUNSEL]: Yes. It was a clerical error on my part.

THE COURT: Yes. I understand. I understand. But he will not be needed in this hearing until the issue of punishment; is that correct?

[COUNSEL]: That is correct. Yes.

THE COURT: Okay. Then the State may proceed.

Thus, as to the issue of Appellant's guilt, not only did Appellant not attempt to litigate the alleged *Brady* violation at the revocation hearing, but he also affirmatively represented that he had no intention of doing so. By the end of the revocation/adjudication hearing, Appellant had not requested or made any attempt to litigate any of the issues raised in his habeas application.

At the subsequent punishment hearing, having already been adjudicated guilty for the 2016 aggravated assault with a deadly weapon offense about two months earlier and having had his community supervision revoked, Appellant testified that there was no knife involved in his altercation with Gomez and that his plea counsel had not explained that Appellant did not have to plead guilty to receive deferred adjudication community supervision. Appellant therefore claimed that his guilty plea was involuntary. Appellant also attempted to testify that Gomez recanted his claim that Appellant used a knife and that the State withheld this information, but the trial court sustained the State's objection to this proffered testimony. On cross-examination, Appellant conceded that he knew he was pleading guilty to aggravated assault with a deadly weapon when he chose to plead guilty.

8

Under the habeas corpus exception, Appellant was required to litigate the issues in his habeas application at the adjudication/revocation hearing, not at a separate, subsequent punishment hearing. *See Few v. State*, 136 S.W.3d 707, 713 (Tex. App.—El Paso 2004, no pet.) (citing *Nix*, 65 S.W.3d at 669–70) (holding that, "because the Application for Writ of Habeas Corpus was not litigated at the same hearing as the revocation, the habeas corpus exception d[id] not apply"). Appellant did not attempt to litigate the issues set out in his application for writ of habeas corpus at his adjudication and revocation hearing, nor did he ever request that the trial court set his writ application for hearing so that these issues could be litigated and ruled on by the trial court. Accordingly, we overrule Appellant's first issue.

II. *The void judgment exception is inapplicable—Appellant's guilty plea, judicial confession, and the reporter's record from the original plea.*

A. *Applicable Law*

"A judgment of conviction in a criminal case is void . . . [if] the record reflects that there is no evidence (not merely insufficient evidence) to support the conviction[.]" *Schibi v. State*, 635 S.W.3d 461, 464 (Tex. App.—Eastland 2021, no pet.). Thus, a conviction is not void if there is *any* evidence supporting it. *Id.* at 465.

"[F]or a judgment to be void, the record must leave no question about the existence of the fundamental defect." *Nix*, 65 S.W.3d at 668. "If the record is incomplete, and the missing portion could conceivably show that the defect does not in fact exist, then the judgment is not void, even though the available portions of the record tend to support the existence of the defect." *Id.* at 668–69. "[W]hen a defendant levels a 'no evidence' challenge against the conviction, but the record contains no court reporter's transcription of the original plea hearing, then the conviction is not void, even though the record—as far as it goes—tends to support the no evidence claim." *Id.* at 669. Accordingly, "we must assume that the missing

record would support the judgment, [and so] the conviction is not void." *Pizana v. State*, 398 S.W.3d 728, 731 (Tex. App.—San Antonio 2009, no pet.).

A guilty plea itself constitutes some evidence for the purpose of defeating a no evidence challenge under the void judgment exception. *Schibi*, 635 S.W.3d at 465; *see also Fox v. State*, No. 02-19-00240-CR, 2020 WL 579111, at *3 (Tex. App.—Fort Worth Feb. 6, 2020, pet. ref'd) (mem. op., not designated for publication) (holding that a guilty plea was sufficient by itself to prevent a judgment from being void for no evidence). A judicial confession also constitutes some evidence for the purpose of defeating a no evidence challenge under the void judgment exception. *Pizana*, 398 S.W.3d at 731.

B. *Analysis*

Appellant argues that the void judgment exception enables him to bring this appeal because there is *no evidence* supporting his conviction for aggravated assault with a deadly weapon. *See Nix*, 65 S.W.3d at 668. We disagree. There are at least two reasons why Appellant is not entitled to bring this appeal under the void judgment exception. First, Appellant pleaded guilty and signed a judicial confession. Second, the appellate record contains no transcript of Appellant's original plea hearing. For either of these reasons, as explained below, Appellant cannot collaterally attack his conviction for aggravated assault with a deadly weapon as supported by no evidence under the void judgment exception.

First, Appellant cannot collaterally attack his conviction for aggravated assault with a deadly weapon as supported by no evidence under the void judgment exception because Appellant *pleaded guilty* to that offense. A conviction is not void for lack of evidence under the void judgment exception when there is *any* evidence supporting it. *Schibi*, 635 S.W.3d at 465. A guilty plea constitutes some evidence supporting the conviction. *Nix*, 65 S.W.3d at 668 n.14; *Schibi*, 635 S.W.3d at 465; *Fox*, 2020 WL 579111, at *3. In this case, Appellant signed a judicial confession

10

wherein he admitted that he committed every act alleged in the indictment and that the "deadly weapon allegations are true and correct." For purposes of a no evidence challenge under the void judgment exception, "a judicial confession alone is sufficient to sustain a conviction upon a guilty plea." *Pizana*, 398 S.W.3d at 731.

Second, a no evidence challenge under the void judgment exception is not available to Appellant because the record contains no transcript of the original plea hearing. When the record contains no court reporter's transcription of the original plea hearing, a conviction based upon a guilty plea is not void even if the record otherwise tends to support an assertion that there is no evidence to support the conviction. *Nix*, 65 S.W.3d at 669. We must assume that the reporter's record would support Appellant's conviction. *Pizana*, 398 S.W.3d at 731. Thus, we assume that the transcript of Appellant's plea hearing would contain additional evidence supporting his conviction for aggravated assault with a deadly weapon.

Because the record does contain evidence supporting Appellant's conviction, he may not challenge the trial court's imposition of deferred adjudication community supervision under the void judgment exception.[1] Accordingly, we overrule Appellant's second issue.

---

[1]We recognize that "[i]nvoluntary plea or ineffective assistance claims, even if meritorious, do not render a conviction void." *Few v. State*, 136 S.W.3d 707, 712 (Tex. App.—El Paso 2004, no pet.); *see also Sisk v. State*, No. 02-05-301-CR, 2006 WL 744302 (Tex. App.—Fort Worth March 23, 2006, pet. ref'd) (mem. op., not designated for publication) (citing *Few* for the proposition that "[a]n involuntary plea does not render a conviction void"). This is because claims of an involuntary plea and ineffective assistance are fact-intensive claims, whereas "a voiding defect should be one that can be ascertained from the record with little difficulty." *Nix*, 65 S.W.3d at 669. Appellant's attack on the trial court's order imposing deferred adjudication community supervision was not limited to involuntary plea and ineffective assistance claims. Here, the holding that the void judgment exception does not apply is, however, dispositive of *all* of Appellant's claims, including ineffective assistance and *Brady* claims alike.

III. *Appellant cannot appeal matters relating to his application for writ of habeas corpus absent a ruling from the trial court denying the application in whole or in part.*

In his third and final issue, Appellant argues that if we determine that his application for writ of habeas corpus "was denied in conjunction with his revocation," then we "should also determine that such denial amounted to an abuse of discretion." We disagree.

Article 11.072 of the Texas Code of Criminal Procedure "establishes the procedures for an application for writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." CRIM. PROC. art. 11.072, § 1. Thus, Article 11.072 governs Appellant's application for writ of habeas corpus because he sought relief from the trial court's imposition of deferred adjudication community supervision. As relevant here, "the appealability of an application for writ of habeas corpus filed under Article 11.072 following a disposition by the district court is controlled by Section 8 of Article 11.072." *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008).

Section 8 states that, "[i]f the application is denied in whole or part, the applicant may appeal under Article 44.02 and Rule 31 of the Texas Rules of Appellate Procedure." CRIM. PROC. art. 11.072, § 8. Thus, where, as here, "the trial court decline[s] to rule on a properly filed habeas application, as article 11.072 requires," Appellant may "file[] a petition for a writ of mandamus in this court, requesting that the trial judge be ordered to rule on his application; however, he has no right to *appeal* such a failure to rule." *Arias v. State*, No. 14-04-00972-CR, 2006 WL 2071846, at *1 n.2 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (mem. op., not designated for publication). It is undisputed that the trial court did not rule on

Appellant's application for writ of habeas corpus. As such, Appellant's third issue presents nothing for our review.

*This Court's Ruling*

Neither the habeas corpus exception nor the void judgment exception applies to Appellant's circumstances. Accordingly, he cannot collaterally attack his original plea of guilty and the trial court's order imposing deferred adjudication community supervision. *See Schibi*, 635 S.W.3d at 466. Because Appellant's complaints concern the validity of his original guilty plea and the trial court's imposition of deferred adjudication community supervision pursuant to that plea, Appellant was required to raise these issues in an appeal from the trial court's order placing him on community supervision, not from the trial court's subsequent adjudication of guilt and revocation of community supervision. *See Manuel*, 994 S.W.2d at 661–62; *Few*, 136 S.W.3d at 713; *Webb v. State*, 20 S.W.3d 834, 835–36 (Tex. App.—Amarillo 2000, no pet.). Such an appeal should have been commenced within thirty days of the trial court's judgment deferring Appellant's guilt and placing him on community supervision. *See* TEX. R. APP. P. 26.2(a)(1). Therefore, we overrule Appellant's first two issues, dismiss his third issue, and affirm the judgment of the trial court. *See Schibi*, 635 S.W.3d at 466; *Sisk*, 2006 WL 744302, at *1.

W. BRUCE WILLIAMS
JUSTICE

June 23, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.