

NUMBER 13-24-00007-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

---

MARK ZAVALA A/K/A
MARK ANTHONY ZAVALA,                                    Appellant,

v.

THE STATE OF TEXAS,                                    Appellee.

---

ON APPEAL FROM THE 319TH DISTRICT COURT
OF NUECES COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Mark Zavala a/k/a Mark Anthony Zavala pleaded guilty pursuant to a

plea bargain agreement to assault family-violence, impeding breath or circulation, a third-

degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B). Zavala was placed on deferred adjudication community supervision. The trial court subsequently revoked Zavala's community supervision, adjudicated him guilty, and sentenced him to ten years' incarceration. *See* TEX. CODE CRIM. PROC. ANN. arts. 42A.101–.111. By two issues, Zavala argues the "trial court violated [his] statutory right to voluntarily enter a knowing and intelligent plea by failing to admonish him of the punishment range," and the evidence was insufficient to support his revocation. We affirm.

## I. BACKGROUND

On September 22, 2023, Zavala pleaded guilty pursuant to a plea agreement. In accordance with the terms of the plea agreement, the trial court deferred the adjudication of guilt and placed Zavala on community supervision for five years. Less than one week later, the State filed a motion to revoke, alleging Zavala had contacted the complainant in the case, Stefanie Villafranco,[1] in contravention of his community supervision conditions. The State's motion was later amended to include additional allegations that Zavala had committed the offense of terroristic threat on or about September 26, 2023, and he had associated with or contacted Villafranco on or about September 22, 2023, and September 26, 2023.

On December 14, 2023, the same day as the revocation hearing, the State filed its notice of intent to enhance Zavala's punishment with a prior felony conviction. The trial court admonished Zavala on the enhancement at the start of the hearing, Zavala pleaded

---

[1] Stefanie Villafranco is listed as "Stefanie Wagoner" in the indictment, but she identifies herself at the revocation hearing as Stefanie Villafranco.

true to the enhancement, and no objections were made.

During the hearing, Zavala's probation officer Ruben Saldana Jr. testified to Zavala's terms and conditions while on probation. One such term was that Zavala could not associate or have contact with Villafranco or her family. Saldana testified that Zavala was aware of this condition.

Villafranco testified that, on September 23, 2023, or September 24, 2023, Zavala called her to tell her that he had been released from jail. During the phone call, Zavala threatened to kill Villafranco and her family. Shortly thereafter, Villafranco received the following text messages.[2]

> 5:25 AM
>
> Hahaha [B]itch[,] the prosecutor let me out[.] [Yo]u dumb bitch[.] [W]atch in time when th[i]ngs die down on probation[,] ima [sic] kill you Stefanie[.] I sat in jail almost a year[.] [Y]our bitch ass and your family are going to die[.] [R]emember I'm a gang member[,] bitch[.] [You] are dead and if you report me[,] I'll have my people lie for me[,] dumb bitch[;] and I'll change this calling app number[.] [Y]our ex hw [sic] gave me your number[.] I'll always find [yo]u[.] ima [sic] kill you[,] bitch[.] [W]atch[.]
>
> You wanted to snitch and say I choked [yo]u. [W]ell next time it's going to be worse[.] I can't wait to kill [yo]u[,] bitch. If [yo]u make a police report[,] you['re] gonna [sic] really die[,] hoe[.] I'm not going back to jail. I'll kill the judge too for making me sit there almost a year[.]
>
> 2:49 PM
>
> Why ain't [sic] you texting me back [yo]u bitch[.] I can't wait till [sic] I go report[.] [Yo]u and your family are going to die[.] I should burn down your mom's house[,] bitch ass hoe[.] [A]ll [o]f you'll [sic] are going to die but on my time[,] and you better not call the cops boich [sic] because you know I'm in a gang[,] and [I']ll have my people go look for you[.] [T]ry me[.]

---

[2] The text messages were admitted into evidence at the hearing.

On cross examination, Villafranco testified that she recognized Zavala's voice during the phone call, and although she did not recognize the phone number, she believed Zavala contacted her using a phone "app" that allows the user to make calls and send messages using a non-carrier registered number. In response to Zavala's threats to hurt Villafranco and her family, she moved out of state. Villafranco complained that the State had "brought [her] back" from California to testify.

Zavala's former roommate, Alvin Smith, testified that he and Zavala met "a few years ago [i]n a recovery place," and after Zavala was released from jail on September 22, 2023, Zavala stayed with Smith. According to Smith, Zavala did not have a phone, did not have access to a phone, and "[h]e wasn't anywhere where [Smith] wasn't" that entire week.

Zavala testified that while he was aware of the probation condition forbidding contact with Villafranco, he never contacted Villafranco. Regarding his alleged gang affiliation, Zavala stated he had not been a "gang member since about '15." Zavala additionally denied his culpability in the underlying offense, stating that he had only pleaded guilty and signed the judicial confession and stipulation of evidence to get out of jail.

The trial court found the terroristic threat allegation to be "not true" and found "true" that Zavala had violated conditions of his probation by contacting Villafranco. Zavala's community supervision was revoked, and he was sentenced. This appeal followed.

## II. WAIVER

By his first issue, Zavala argues that the "trial court violated [his] statutory right to voluntarily enter a knowing and intelligent plea by failing to admonish him of the punishment range." Zavala cites to Article 26.13's plea admonishment requirements throughout his analysis. *See id.* art. 26.13 (plea of guilty admonishments).

An appellate review of an order adjudicating guilt ordinarily is limited to determining whether the trial court abused its discretion in determining that the defendant violated the terms and conditions of his community supervision. *See Wright v. State*, 506 S.W.3d 478, 481 (Tex. Crim. App. 2016); *Aguilera v. State*, No. 13-22-00308-CR, 2024 WL 1312798, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 28, 2024, no pet.); *see also* TEX. CODE CRIM. PROC. ANN. art. 42A.755(e). Although there are two limited exceptions, the "void judgment" exception and the "habeas corpus" exception—neither apply in this case. *See Wright*, 506 S.W.3d at 481 (explaining the exceptions). Relevant here, "a defendant given deferred adjudication community supervision may raise issues related to the plea proceeding only in an appeal taken when the supervision is first imposed." *Riles v. State*, 452 S.W.3d 333, 335 (Tex. Crim. App. 2015); *see also Castillo v. State*, No. 13-11-00551-CR, 2014 WL 4049877, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 14, 2014, no pet.) (mem. op., not designated for publication).

Zavala brings his appeal from an order adjudicating guilt following a revocation proceeding but impermissibly challenges the voluntariness of his plea. *See Riles*, 452 S.W.3d at 335. Such complaint must be raised in an appeal taken from the trial court's order placing him on deferred adjudication community supervision. *Id.* Because it was

5

not, Zavala's complaint challenging the voluntariness of his plea is not cognizable on appeal now.[3] *See id.*; *see also Becker v. State*, No. 13-17-00398-CR, 2018 WL 4100814, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2018, no pet.) (mem. op., not designated for publication) ("Each of appellant's complaints relate to the original plea proceeding when the conditions of community supervision were first imposed. Such complaints cannot be reviewed on appeal from the trial court's revocation of community supervision."); *Castillo*, 2014 WL 4049877, at *3 ("We conclude that Castillo's complaint challenging the judgment that placed him on deferred adjudication community supervision is not cognizable on appeal because he was required to raise the issue in a timely appeal from the trial court's order placing him on deferred adjudication community supervision."). We overrule Zavala's first issue.

## III. SUFFICIENCY

Zavala next challenges the sufficiency of the evidence in support of his revocation.

An order revoking probation must be supported by a preponderance of the evidence, meaning the "greater weight of the credible evidence which would create a

---

[3] Zavala alludes to but stops short of challenging the timeliness of the State's notice of punishment enhancement and makes no mention of his due process right to be timely notified. *See generally Ex parte Parrott*, 396 S.W.3d 531, 537 (Tex. Crim. App. 2013) ("In a direct-appeal context, this Court has held that a defendant's federal constitutional due-process rights are not violated by post-guilt, pre-punishment-phase notice of the State's intent to enhance his punishment with a prior conviction."). In any event, the record indicates Zavala pleaded true to the enhancement; Zavala did not request additional time or assert that he was unprepared; Zavala was sentenced within the non-enhanced punishment range; and the judgment contains no enhancement language. *See id.* ("Even when a defendant receives notice after he has been convicted, his due-process rights are not violated as long as notice is sufficient to enable him 'to prepare a defense to them,' and he is afforded an opportunity to be heard."); *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010) ("In determining whether appellant received sufficient notice of the State's intent to enhance punishment, we look to the record to identify whether appellant's defense was impaired by the timing of the State's notice."); *see also Suarez v. State*, No. 13-17-00085-CR, 2018 WL 1325782, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 15, 2018, no pet.) (mem. op., not designated for publication) ("When the accused has no defense to the enhancement allegation and has not suggested the need for a continuance to prepare one, notice given at the beginning of the punishment phase satisfies due process.").

reasonable belief that the defendant has violated a condition of his probation." *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (quoting *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)); *Martinez v. State*, 563 S.W.3d 503, 510 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). We review a trial court's decision under an abuse of discretion standard. *Hacker*, 389 S.W.3d at 865. The trial judge is the sole trier of facts, arbiter of the credibility of witnesses, and the weight to be given to the evidence presented. *Id.* We view the evidence adduced in a revocation proceeding in the light most favorable to the trial court's ruling. *See id.*; *Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *see also Connelly v. State*, No. 13-21-00354-CR, 2023 WL 2029139, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 16, 2023, no pet.) (mem. op., not designated for publication).

The trial court found true that Zavala violated his conditions of probation, namely, that he contacted Villafranco on two separate occasions: on or about September 22, 2023, and September 26, 2023. During the hearing, Saldana testified that Zavala's community supervision terms included no contact with Villafranco or her family, and Zavala was aware of this condition. Zavala acquiesced that he knew of the condition but maintained that he had not contacted Villafranco. Zavala's testimony was supported by his roommate who affirmed that he had been around Zavala "24/7" since his release and Zavala had limited access to a phone during that period. Nonetheless, Villafranco testified that the day after Zavala was released from jail, he called her and made threatening comments. She was unequivocal about recognizing his voice. Villafranco further testified that threatening text messages followed, and she feared for her life to such degree that

7

she moved out of state. The trial court here was entitled to believe Villafranco and disbelieve Zavala and Smith, and it is not within our province to disturb this evaluation of the evidence. *See Smith v. State*, 587 S.W.3d 413, 420 (Tex. App.—San Antonio 2019, no pet.) (concluding that trial court could find appellant violated a condition of his probation based on victim's testimony even when contested by appellant); *see also Lara v. State*, No. 13-21-00397-CR, 2022 WL 2976651, at *5 (Tex. App.—Corpus Christi–Edinburg July 28, 2022, no pet.) (mem. op., not designated for publication) ("The trial court appeared to believe Haley and Deputy Caddell's testimony and disbelieve Lara's, and it is not within our province to disturb this evaluation of evidence."); *Hunter v. State*, No. 07-16-00066-CR, 2017 WL 4341545, at *4 (Tex. App.—Amarillo Sept. 29, 2017, no pet.) (mem. op., not designated for publication) ("When deciding whether to accept the victim's testimony that appellant contacted her, or appellant's testimony he did not contact her, the trial court was the sole judge of the credibility of the witnesses and the weight to be given their respective testimony.").

Viewing the evidence in a light most favorable to the trial court's findings, we conclude that the trial court could have reasonably found by a preponderance of the evidence that Zavala violated the terms of his community supervision by contacting Villafranco. *See Hacker*, 389 S.W.3d at 865; *Martinez*, 563 S.W.3d at 510. We overrule Zavala's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
15th day of August, 2024.

9