**Opinion filed April 23, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00106-CR

_____

**AUSTIN DOUGLAS WORLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 39th District Court**

**Throckmorton County, Texas**

**Trial Court Cause No. 1260**

### M E M O R A N D U M   O P I N I O N

Appellant, Austin Douglas Worley, appeals the revocation of his community supervision.

On December 12, 2017, Appellant originally pleaded guilty to the third-degree felony offense of evading arrest in Throckmorton County. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West Supp. 2025). Pursuant to the terms of a plea

bargain agreement between Appellant and the State, the trial court deferred a finding of guilt and placed Appellant on community supervision for a period of three years. In addition, the trial court assessed a fine of $1,000 and court costs of $743.

In June 2020, the trial court entered an agreed order extending Appellant's community supervision by three years with an additional $1,000 fine following the State's Amended Motion to Revoke Community Supervision and Adjudicate Guilt. The State filed a subsequent motion to adjudicate in July 2021 alleging that Appellant committed aggravated assault with a deadly weapon on June 18, 2021, but the trial court found that the evidence was insufficient to support the State's allegation and denied the State's motion.

This appeal arises from the hearing on the State's third motion to adjudicate, filed in October 2023. At the conclusion of the hearing, the trial court found that Appellant violated certain terms and conditions of his community supervision. After the punishment hearing, the trial court adjudicated Appellant's guilt, revoked his community supervision, and sentenced him to confinement for a term of three years in the Institutional Division of the Texas Department of Criminal Justice.

In his sole issue, Appellant asserts that the trial court abused its discretion in revoking his community supervision because there was insufficient evidence to establish by a preponderance of the evidence that Appellant violated certain terms and conditions of his community supervision. We affirm.

*Background Facts*

In its third motion to adjudicate, the State alleged that Appellant had committed six violations of the terms and conditions of his community supervision. Specifically, the State alleged that Appellant: (1) committed the offense of aggravated assault with a deadly weapon in September 2023; (2) failed to report in writing for a number of months between 2021 and 2023; (3) possessed a deadly

2

weapon known to be a firearm; (4) failed to pay his fine for a number of months between 2020 and 2023; (5) failed to pay his community supervision fees for a number of months between 2020 and 2023; and (6) failed to pay his community supervision transfer fee at the time it was due in September 2023.

On February 6, 2024, the trial court held a hearing on the motion to adjudicate. Appellant pleaded "not true" to the State's allegations. Before hearing testimony, the trial court took judicial notice of the State's third motion to adjudicate and the trial "[c]ourt's community supervision corrections file." Alicia Langford, the director of the Community Supervision Department for the 39th Judicial District, testified. Langford was familiar with Appellant, but she had never met him or directly supervised him. In that regard, Appellant was seen by the previous administration of the Community Supervision Department and then he transferred his community supervision to Taylor County.

Langford testified that Taylor County supervision was a "courtesy supervision." Appellant was seen face-to-face in Taylor County, but he continued to owe fees to Throckmorton County, and he was still responsible for reporting by web or mail once a month to Throckmorton County.

Langford explained that since 2021, Appellant had failed to report by mail or web thirteen times. Langford did not recall if Appellant had made efforts during that period to make contact by e-mail, messenger, or phone. She did note that he may have called because she had documented once that he called and spoke with her office manager, Elena Mauricio. Langford explained that, even if Appellant did call in and provide an update, that did not satisfy his duty to physically submit a report through the web or by mail.

Langford reported that Appellant "was pretty good at making some sort of payment each month." However, he was delinquent in the amount of $1,111 for the

fines assessed, the probation fee, and the transfer fee at the time of the hearing. Appellant continued to be responsible for the fine, probation fee, and transfer fee after paying other costs. Langford testified that the State's motion to adjudicate accurately portrayed the months Appellant failed to pay his probation fee.

Langford was not aware of any modifications regarding Appellant's reporting instructions or his payments. She was not aware of any discussion with Appellant about his ability to pay. Referring to progress reports, Langford noted that Appellant was employed with Taco Bueno in September 2023 and with Whataburger in June 2023.

Langford testified to the new offense alleged in the State's motion, which occurred on September 16, 2023. Langford was made aware of the new offense through a progress report from the Taylor County Community Supervision Department. The case was no-billed by the grand jury in Taylor County. In the incident report for the offense, Appellant's father stated that Appellant produced a shotgun and threatened to kill him. Appellant's father advised that Appellant's actions put him in fear for his life.

According to the incident report, Appellant contended that he was the victim of the assault and not the aggressor. However, in the report, there were statements from Appellant that he struck his father with crutches, used his fingers to gouge his father's eyes, and stomped on his father's feet. Langford acknowledged that Appellant's actions may have been in response to his father pulling a shotgun on Appellant and so there may have been an element of self-defense. The shotgun that was involved was retrieved from Appellant's father's home, not from Appellant's person or his vehicle.

Appellant testified next. He explained that the person he reported to in the community supervision department for the 39th District Court was Elena, the office

4

manager. He testified that he reported to her by phone once a month, on the same day he reported in-person to the Taylor County probation office. He testified that he told Elena where he was living and about any job changes.

Appellant testified that he did not realize that reporting by phone was not the proper way to report. He was not given any mail-in forms, and he testified he did not know about mailing in reports. He conceded, however, that he was told how to download the reporting app that would allow him to report by web and was given a piece of paper with instructions. Appellant stated he did his best to report every month. He testified that the Taylor County probation office told him his balance there would be zero, but he would continue to owe money with the 39th Judicial District.

Appellant explained that he worked "off and on." He worked eight jobs during the time he was in Abilene. He explained that his trouble keeping a job was due to the COVID-19 pandemic and his schizophrenia. Appellant applied for social security benefits to help with his mental health issues, and reported those payments were supposed to begin in August. He reported wanting to pay his remaining balance even before then and stated he believed he had paid $6,610 of his probation fees, court costs, and fines so far.

Appellant also discussed the alleged assault. He explained that he and his father were living together at that time. He did not know there was a firearm in the house until his father aimed it at him when he was leaving the bathroom. Appellant reported that he defended himself at that time. He testified that he called the ambulance first because he was choked. The police came and took a written statement from him. He testified that the "DA in Abilene, Texas" apologized to him because "he read [Appellant's] dad's statement and said it was ludicrous." Appellant

5

was in custody from September 16, 2023 until a week before the hearing in February 2024.

Appellant reported that he took medication to "keep [his] anger in check." He stated he started taking it about five years ago, but they had adjusted it "several times" and recently added two medications. Appellant also reported that he had spoken with counselors in Albany and in Abilene. Appellant reported that he wanted to have a counselor again to help manage his mental illness. He also reported wanting to return to school to be an HVAC tech. He believed that the training would help him to be employed successfully.

On cross-examination, Appellant stated he had been arrested three times since being placed on community supervision in 2017. He admitted that all three times involved some type of physical interaction with another person. Appellant testified that, during the September 2023 alleged assault, he did not place his father in a chokehold. He testified that it was his father who placed him in a chokehold. Appellant admitted that he stomped on his father because he was choking Appellant and Appellant "was starting to black out."

Appellant reported telling Elena that his payments were too much, and that he could not afford food and was on food stamps. He stated that he "was trying to do everything right, [but he] would be kicked out by [his] dad on numerous occasions." He testified that he was "hit and miss" in submitting his reports in the beginning, but he improved when Elena told him how to use the app correctly. He explained he was confused because he also had reporting requirements in Abilene, and he did not understand clearly the requirement to report to both probation offices.[1]

---

[1]Appellant's probation was transferred to Taylor County twice, in 2018 and 2020. Appellant testified that the "last time [he] had his probation transferred" to Taylor County, he "only had to report to them," but when he was "placed back into Throckmorton and back again, [he] had to report to both, and [he] didn't understand that very clearly."

Appellant admitted that he was currently unemployed but stated he was looking for employment. He explained that during the COVID-19 pandemic, jobs were hard to find, and when jobs could be found, "you were lucky to get 12 hours a week." Appellant explained that he did not pay his fees during those periods "[b]ecause [he] had to eat."

Appellant stated that he "want[ed] to do better," but admitted that continuing him on community supervision might not be "realistic" because "eventually you come to the conclusion of . . . nothing is seemingly working." However, on redirect, Appellant said that he believed he could be successful with continued supervision, as he felt like he had "come a long ways."

Carl Jeffery Dormier testified that he has known Appellant since 2015. Dormier testified that Appellant did not always handle confrontation well, but he said that he did not feel threatened by Appellant. He reported that he and Appellant had an altercation in 2020, but they had since worked out how to handle disagreements without any kind of physical altercation. Dormier explained that Appellant had gotten better about his anger and trying to leave when things escalated. He stated that "problems happen typically when [Appellant] gets cornered and can't get away."

After hearing the evidence, the trial court found five of the six allegations in the motion to be "true" by: (1) committing the new offense of aggravated assault with a deadly weapon, (2) failing to report in writing, (3) failing to pay his fine, (4) failing to pay his community supervision fee, and (5) failing to pay his transfer fee.

The trial court ordered a presentence investigation report to be prepared and reset the case for the punishment hearing. At the conclusion of the punishment hearing, the trial court found Appellant guilty of the offense and sentenced him to

7

confinement for a term of three years in the Institutional Division of the Texas Department of Criminal Justice. Further, the trial court ordered Appellant to pay the balance of all fines, fees, and court costs that remained due.

*Analysis*

In his sole issue, Appellant contends that the trial court abused its discretion in revoking his community supervision because there was insufficient evidence to support the trial court's findings that Appellant violated certain terms and conditions of his community supervision. Appellant acknowledges that he must successfully challenge each community supervision violation found true by the trial court to prevail on appeal. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009).

Given the unique nature of a revocation hearing and the trial court's broad discretion in the proceedings, general standards for reviewing the sufficiency of the evidence do not apply. *See Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013); *Miles v. State*, 343 S.W.3d 908, 912–13 (Tex. App.—Fort Worth 2011, no pet.). Instead, we review a trial court's decision to revoke community supervision under an abuse-of-discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The State must prove a violation of the terms and conditions of community supervision by a preponderance of the evidence, and proof of any one of the alleged violations is sufficient to uphold the trial court's decision to revoke. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) ("proof of a single violation will support revocation"); *Cardona*, 665 S.W.2d at 493 (burden of proof is by a preponderance of the evidence); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel. Op.] 1980); *Jones v. State*, 472 S.W.3d 322, 324 (Tex. App.—Eastland 2015, pet. ref'd).

The trial court abuses its discretion by revoking community supervision if the State failed to meet its burden of proof. *Cardona*, 665 S.W.2d at 493–94;

*Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). "[A]n order revoking probation must be supported by a preponderance of the evidence; in other words, that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Scamardo*, 517 S.W.2d at 298. The trial court is the sole trier of fact, the credibility of the witnesses, and the weight given to their testimony. *Naquin v. State*, 607 S.W.2d 583, 586 (Tex. Crim. App. [Panel Op.] 1980). An appellate court must view the evidence presented at a revocation hearing in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981).

Appellant contends that because the terms and conditions of community supervision were not entered into evidence, the only evidence of the terms and conditions was the oral testimony presented at the hearing. Appellant is incorrect in making this contention. As held by the Texas Court of Criminal Appeals in *Cobb v. State*:

> Due to the continuing jurisdictional nature of a probation revocation hearing, formal proof of the judgment and order of probation is not required in a probation revocation hearing. For appellate purposes in a sufficiency of the evidence review those documents must appear in the record. Consequently, there is no need for the trial court to take judicial notice of these documents.

851 S.W.2d 871, 874–75 (Tex. Crim. App. 1993). Here, because the judgment as well as the terms and conditions appear in the clerk's record, they were properly considered by the trial court without formally being introduced into evidence. *See id.* Furthermore, they are properly before us to consider on appeal. *See id.*

*Failure to Report to Throckmorton County*

We begin our analysis of the record by examining violation no. 2, that Appellant failed to report to the Community Supervision Department in Throckmorton County. Courts may revoke community supervision for a violation

9

of any condition, including a violation of any "technical" condition, such as a probationer's failure to report. *Nurridin v. State*, 154 S.W.3d 920, 924 (Tex. App.—Dallas 2005, no pet.); *see Coffel v. State*, 242 S.W.3d 907, 909 (Tex. App.—Texarkana 2007, no pet.).

Appellant challenges the reporting violation on the contention that the community supervision department did not provide him with sufficient notice of his need to continue reporting in writing to Throckmorton County after his community supervision was transferred to Taylor County. In this regard, Appellant asserts that a defendant should be given adequate and specific notice of the terms and conditions of community supervision in order to be bound by those conditions. Appellant additionally contends that it is an affirmative defense to a revocation proceeding based on an alleged failure to report if a community supervision officer does not contact or attempt to contact the defendant in person.

Appellant bases his alleged affirmative defense on Article 42A.756. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.756 (West 2018). As an initial matter, we note that, if a due diligence defense applies, it would be the due diligence defense located in Article 42A.109 rather than the defense located at Article 42A.756, because this case concerns deferred adjudication community supervision. *See id*. arts. 42A.109, 42A.756. The articles apply in different situations, but their application is the same. *See Aguilera v. State*, 692 S.W.3d 788, 790–91 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.); *Duncan v. State*, No. 05-24-01292-CR, 2025 WL 3143489, at *2 (Tex. App.—Dallas Nov. 10, 2025, no pet.) (mem. op., not designated for publication).

Article 42A.109 provides that,

> [I]t is an affirmative defense to revocation for an alleged violation based on a failure to report to a supervision officer as directed or to remain within a specified place that no supervision officer, peace officer, or

10

other officer with the power of arrest under a warrant issued by a judge for that alleged violation contacted or attempted to contact the defendant in person at the defendant's last known residence address or last known employment address, as reflected in the files of the department serving the county in which the order of deferred adjudication community supervision was entered.

Article 42A.109 descends from the defense that was available at common law in revocation proceedings wherever the State failed to exercise "due diligence" in apprehending a probationer after the period of community supervision had expired. *Garcia*, 387 S.W.3d at 22–23; *Peacock v. State*, 77 S.W.3d 285, 287–88 (Tex. Crim. App. 2002); *Duncan*, 2025 WL 3143489, at *2. The statute applies where the State files a timely motion to revoke but does not arrest the defendant until after the community supervision term has expired. *Garcia*, 387 S.W.3d at 25. It does not apply where, as here, an arrest warrant is executed and the defendant is apprehended before the community supervision term ends. *See id.*; *Aguilera*, 692 S.W.3d at 790–91 (collecting cases); *Waggoner v. State*, No. 11-07-00335-CR, 2009 WL 1800617, at *2 (Tex. App.—Eastland June 25, 2009, pet. ref'd) (mem. op., not designated for publication).

Further, Texas courts of appeals have rejected the idea that the due diligence defense places a duty on the State "to track down the probationer and make sure that he reports to his community supervision officer as ordered." *Battle v. State*, No. 04-16-00709-CR, 2017 WL 3044578, at *2 (Tex. App.—San Antonio July 19, 2017, no pet.) (mem. op., not designated for publication); *see also Roper v. State*, No. 06-15-00077-CR, 2016 WL 398401, at *4 (Tex. App.—Texarkana Feb. 1, 2016, no pet.) (mem. op., not designated for publication) (explaining the statute does not "create a duty on the State to track [a defendant] down and make sure that he reports to his community supervision officer as ordered").

Here, the trial court heard evidence that Appellant failed to report by mail or web thirteen times since 2021. While the evidence showed that Appellant might have called and provided an update to the office manager, who did not testify, Langford explained that this did not satisfy Appellant's requirement to report through web or by mail. Appellant claimed that he did not know that calling was not the proper way to report, but he also stated that he was told how to download the reporting app and given instructions for using it. He testified that he "did [his] best" to report every month, but he continued to fail to report in writing, including in January and April 2023. Accordingly, there was evidence upon which the trial court could find based on a preponderance of the evidence that Appellant failed to report in writing.

Additionally, Appellant was provided notice of the terms and conditions of his community supervision. Appellant's signature and right thumbprint appear at the end of the order imposing the conditions of his community supervision, acknowledging his receipt of a copy of the order. *See Riles v. State*, 452 S.W.3d 333, 337 (Tex. Crim. App. 2015) (explaining that, with their signature, an appellant "expressly acknowledge[s] having read and understood the stipulations of [their] deferred adjudication community supervision"). At the plea hearing, Appellant confirmed that he had reviewed the order, understood the terms of his probation, that he "must follow each and every term" and "each and every order given to [him] by [his] probation officer"; stated that he did not have any questions about any of the terms; and recognized that the trial court "at a future hearing on a motion to revoke [his] probation will not look favorably at a claim that [he] didn't understand one of the[] terms."

The order lists Appellant's community supervision conditions, including the condition that Appellant "[m]ake a truthful report in writing to the Community

Supervision and Corrections Department of THROCKMORTON County, Texas, at least once each month during this term of community supervision." The order also provides that, if Appellant is allowed to transfer community supervision to another county, he "shall WITHOUT FAIL continue to report in writing to the Community Supervision Department of THROCKMORTON County." Accordingly, Appellant had sufficient notice of the terms and conditions of his community supervision.

We conclude that there was sufficient evidence for the trial court to find based on a preponderance of the evidence that Appellant failed to report in writing. Proof of any one of the alleged violations is sufficient to uphold the trial court's decision to revoke. *Garcia*, 387 S.W.3d at 26.

We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


April 23, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.